UNITED STATES of America,

v.

Carl COOPER, Defendant.

No. Crim. 99–0266(JHG).

United States District Court,
District of Columbia.

April 14, 2000.

Steven R. Kiersh, Washington, DC, Francis Darron Carter, Washington, DC, for Carl Cooper, defendant.

Kenneth Leonard Wainstein, Mary Incontro, U.S. Atty's Office, Washington, DC, for U.S.

## *MEMORANDUM OPINION AND ORDER*

JOYCE HENS GREEN, District Judge.

The 48–count indictment charging defendant, Carl Cooper ("Cooper"), with various racketeering acts of robbery, murder, conspiracy and firearms offenses was filed on August 4, 1999, and a jury trial has been scheduled for May 2, 2000. The government is seeking the death penalty pursuant to 18 U.S.C. §§ 924(c)(1) and 924(j) for three counts of murder in the course of using a firearm during a crime of violence. Cooper has filed several motions (one of which is an omnibus motion addressing approximately 25 issues) attacking the government's decision to pursue the death penalty, as well as the constitutionality of the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591, et seq., both

facially and as applied to him.[1] Addressed in this Memorandum Opinion and Order are: (1) Cooper's Motion to Compel Disclosure of the United States Attorney's Initial Recommendation to the Attorney General Regarding Decision to Seek the Death Penalty; (2) Defendant's Motion to Strike Notice of Intent to Seek the Death Penalty for a Violation of 18 U.S.C. § 3593 and for Discovery and Issuance of Subpoenas; (3) Defendant's Motion to Strike Notice of Intent to Seek the Death Penalty as Violative of the Fifth and Eighth Amendments and for Discovery and Issuance of Subpoenas; and (4) Cooper's Motion to Preclude the Death Penalty; to Dismiss the Government's Notice of Intent to Seek the Death Penalty; to Strike Aggravating Factors; and to Request an Evidentiary Hearing on the Sufficiency of the Statutory and Nonstatutory Aggravating Circumstances Alleged by the Government. The first three motions are all denied in their entirety. The fourth motion is denied for the most part, however, the government is ordered to modify the notice of intent in certain respects as indicated in this Memorandum Opinion and Order, and the Court has already scheduled a hearing on the issues left open concerning the government's use of unadjudicated criminal conduct and obstruction of justice evidence.

### I. The Federal Death Penalty Act

The FDPA specifies the procedure to be followed before a defendant may be sentenced to death. At the outset, if the government elects to pursue the death penalty for any death-eligible offense, it must file with the Court and serve on the defendant within a "reasonable time before trial" a notice of intent setting forth, among other things, "the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove

1. Cooper also argues that the death penalty is "cruel and unusual punishment under all circumstances in violation of the Eighth Amendment." As Cooper acknowledges, this argument has been repeatedly rejected by the United States Supreme Court. *See, generally,*

as justifying a sentence of death." 18 U.S.C. § 3583. The government filed such a notice in this case on February 14, 2000.

Once the notice is filed and a defendant is subsequently convicted of a capital offense, the case proceeds to sentencing. Under the FDPA, a sentencing hearing is conducted either before the jury that determined the defendant's guilt, or before a jury impaneled for the purpose of the sentencing hearing if "(a) the defendant was convicted upon a plea of guilty; (b) the defendant was convicted after a trial before the court sitting without a jury; (c) the jury that determined the defendant's guilt was discharged for good cause; or (d) after initial imposition of a sentence under this section, reconsideration of the sentence under this section is necessary." 18 U.S.C. § 3593(b). The sentence may be determined by the Court alone only upon request of the defendant with the government's consent. *See id.*

The FDPA contains several steps the jury (or the Court if the statutory requirements are met) must go through before a sentence of death can be imposed on a defendant who is found guilty of a capital crime. First, the government must prove the defendant had the requisite intent to commit the capital offense. The jury must unanimously find beyond a reasonable doubt that the defendant did at least one of the following:

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury that resulted in the death of the victim;

(C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the partici-

*McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). This Court must follow the Supreme Court's pronouncement on the issue.

pants in the offense, and the victim died as a direct result of the act; or

(D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

18 U.S.C. § 3591(a)(2)(A)–(D).

Second, if the jury finds that the requisite intent exists (if it does not so find, the death penalty may not be imposed), it must then consider the statutory aggravating factors alleged by the government. There are sixteen statutory aggravating offenses for a crime involving homicide. *See* 18 U.S.C. § 3592(c). In this case, the government has noticed its intent to present two statutory aggravating factors to the jury: (1) the defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value, *see* 18 U.S.C. § 3592(c)(8); and (2) the defendant intentionally killed more than one person in a single criminal episode, *see* 18 U.S.C. § 3592(c)(16). If the jury unanimously finds beyond a reasonable doubt the existence of one or more of the statutory aggravating factors, it then proceeds to the third step. If it does not so find, a sentence of death may not be imposed. *See* 18 U.S.C. § 3593(d).

If the jury finds the existence of at least one statutory aggravating factor, it then considers the statutory aggravating factor or factors, together with non-statutory aggravating factor(s) and mitigating factor(s). Non-statutory aggravating factors are defined as "any other aggravating factor for which notice has been provided." 18 U.S.C. § 3593(d). Any non-statutory aggravating factor must be found to exist beyond a reasonable doubt by a unanimous jury. *See* 18 U.S.C. § 3593(d) and (e). In this case, the government has identified in its notice of intent five non-statutory aggravating factors: (1) victim impact; (2)

other criminal history; (3) obstruction of justice; (4) leadership role in the racketeering enterprise; and (5) future dangerousness.

Mitigating factors, for which the defendant bears the burden of proof, must be proved by a "preponderance of the information." *See* 18 U.S.C. § 3593(c). In addition, "a finding with respect to a mitigating factor may be made by 1 or more members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such factor established ... regardless of the number of jurors who concur." 18 U.S.C. § 3593(d). Jurors can consider "any mitigating factor," including the defendant's impaired capacity, duress, minor participation, the existence of other equally culpable defendants who will not be punished by death, the lack of a prior criminal record, any "severe mental or emotional disturbance," the consent of the victim, and any "factor in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a).

After considering all of the aggravating (statutory and non-statutory) and mitigating factors, the jury decides whether "all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e).

## II. Facial Challenges to the Constitutionality of the FDPA

Cooper argues the FDPA is facially unconstitutional for a variety of reasons, all of which are addressed below.

### A. Narrowing of the Class of Persons Eligible for the Death Penalty

The Supreme Court of the United States has held that in order to survive

constitutional scrutiny, a death penalty statute must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens,* 462 U.S. 862, 876, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The goal of narrowing the class of persons eligible can be accomplished at either the guilt phase or the sentencing phase of the trial: "[t]he legislature may itself narrow the definition of capital offenses, ... so that the jury finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase." *Lowenfield v. Phelps,* 484 U.S. 231, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).

Cooper argues the FDPA fails to narrow the class of persons eligible to receive the death penalty for two reasons. First, the requirement that the jury find an element of intent as set forth in section 3591(a)(2)(A)–(D) fails to distinguish a capital crime from other crimes involving an intentional killing. Second, the statutory aggravating factors are "so broad as to apply to essentially any of the vast range of federal offenses where death is provided by statute." Mot. at 24–25. Neither of these arguments is persuasive.

As Cooper points out, the Supreme Court of the United States has held that a defendant must have some level of intent before a sentence of death can be carried out by the government on a capital murder conviction. In *Enmund,* the Supreme Court ruled that the Eighth Amendment prohibits punishing persons who "[themselves] kill, attempt to kill, or intend that a killing take place or that lethal force will be employed" in the same manner as those persons who cause unintentional harm. *Enmund v. Florida,* 458 U.S. 782, 797–98, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). In *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), the Supreme

Court held that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement," *Id.* at 158, 107 S.Ct. 1676. Cooper argues that rather than narrowing the class of offenses eligible for the death penalty, the intent provision of the FDPA simply repeats what the Constitution, as interpreted in *Enmund* and *Tison,* requires.

There are three capital charges in this case, all brought under 18 U.S.C. § 924(c)(1), and § 924(j), which states "[a] person who ... causes the death of a person through the use of a firearm shall—(1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment...." Section 1111(a) defines murder

> as the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnaping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the the first degree.

18 U.S.C. § 1111(a). Murder as defined in section 1111(a) includes felony-murder. The malice aforethought requirement is satisfied by a showing of intent to commit the specified underlying felony. *See United States v. Pearson,* 159 F.3d 480, 485 (10th Cir.1998); *United States v. Flores,* 63 F.3d 1342, 1371 (5th Cir.1995); *United States v. Chischilly,* 30 F.3d 1144, 1159–60 (9th Cir.1994); *United States v. Thomas,* 34 F.3d 44, 48–49 (2d Cir.1994).

In *Flores,* the Fifth Circuit considered the same argument made by Cooper here.[2]

---

**2.** Although *Flores* involved a death penalty prosecution under the Anti–Drug Abuse Act of

In that case, the parties agreed that the intent factors were taken from the *Enmund* and *Tison* decisions. The *Flores* Court held that because section 1111 includes simple felony-murder requiring only an intent to commit the underlying felony, it also encompasses those defendants who may not qualify for the death penalty under *Enmund* and *Tison* and consequently, the ADAA. *Id.* at 1371. In other words, defendants convicted of felony-murder who were not deemed to show reckless indifference to human life would not be eligible to receive a sentence of death.

In order for a jury to impose a sentence of death for a capital crime under 18 U.S.C. §§ 924(c)(1) and 924(j), the prosecution must prove at a minimum that the defendant "intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act." 18 U.S.C. § 3591(a)(2)(D). Many felony-murder crimes under 18 U.S.C. § 1111(a) would not meet that standard. As a result, the FDPA sufficiently narrows the class of persons eligible for the death penalty. *See Flores*, 63 F.3d at 1371; *United States v. Tipton*, 90 F.3d 861, 898 (4th Cir.1996); *United States v. Davis*, 904 F.Supp. 554, 557 (E.D.La.1995).

■ Even if the statutory intent elements did not narrow the class of persons eligible to receive the death penalty, narrowing is nonetheless accomplished by the requirement that the jury find beyond a reasonable doubt the existence of at least one statutory aggravating factor. *See Zant*, 462 U.S. at 878, 103 S.Ct. 2733 ("Our cases indicate, then, that statutory aggravating circumstances play a constitutionally necessary function as the state of legislative definition: they *circumscribe the*

class of persons eligible for the death penalty."). Cooper's argument that the FDPA is unconstitutional because the statutory aggravating factors are so broad they apply to all capital cases is unavailing. Under the Constitution, what is required to narrow the class of persons eligible at the sentencing stage is that the statutory aggravating factors enable a jury to make an "individualized determination on the basis of the character of the individual and circumstances of the crime." *See id.* As will be discussed throughout this opinion, the statutory aggravating factors comport with this requirement.

### B. "Evidentiary Free for All"

■ The FDPA provides that information at a capital sentencing hearing

is admissible regardless of its admissibility under the rules of evidence governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

18 U.S.C. § 3593(c). Cooper argues that this standard violates his right to confront the witnesses against him because it creates an "evidentiary free-for-all" and diminishes the reliability of the sentencing hearing. However, the Supreme Court of the United States has rejected the notion that stringent evidentiary rules should apply at capital sentencing hearings, stressing instead the importance of the jury or the sentencing judge having a full and complete body of information available for consideration. As the Court stated in *Williams v. New York:*

Highly relevant—if not essential—to [a judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punish-

---

1988 ("ADAA"), 21 U.S.C. § 848(e)–(r), the intent elements required for imposition of the death penalty under that statute, § 848(n)(1),

are, for purposes of this Court's analysis, the same as the intent factors required by the FDPA.

ment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial. 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The Supreme Court reaffirmed this principle in *Gregg v. Georgia*, when it stated that "so long as the evidence introduced and the arguments made at the pre-sentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes a sentencing decision." 428 U.S. 153, 203–04, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

Although there exists a tension between the need for heightened reliability in death penalty cases, *see Lowenfield*, 484 U.S. at 238–39, 108 S.Ct. 546, and the need for the sentencing body to have as much information as possible, the FDPA meets constitutional requirements in that it excludes from jury consideration information that is outweighed by the risk of unfair prejudice to the defendant, or the risk that it would confuse or mislead the jury.

This Court agrees with the numerous other Courts that have considered and rejected the same or substantially similar arguments as those presented by Cooper here. *See, e.g., United States v. Jones*, 132 F.3d 232, 241–42 (5th Cir.1998), *aff'd*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999); *United States v. Frank*, 8 F.Supp.2d 253 (S.D.N.Y.1998); *United States v. Nguyen*, 928 F.Supp. 1525 (D.Kan.1996); *United States v. McVeigh*, 944 F.Supp. 1478 (D.Colo.1996).[3]

## C. Appellate Review.

■ The FDPA provides for appellate review of a death sentence upon the filing of a notice of appeal by the defendant. *See* 18 U.S.C. § 3595(a). The Court of Appeals must review the entire record, including the evidence submitted during the trial, the information submitted during the sentencing hearing, the procedures employed in the sentencing hearing, and the special findings returned by the jury. *See* 18 U.S.C. § 3595(b).[4] Cooper chal-

---

**3.** Several courts have considered and rejected similar challenges in the context of the ADAA despite the fact that the ADAA affords capital defendants less protection than the FDPA. *See, e.g., United States v. Walker*, 910 F.Supp. 837, 853 (N.D.N.Y.1995); *United States v. Spivey*, 958 F.Supp. 1523, 1529–30 (D.N.M. 1997); *United States v. DesAnges*, 921 F.Supp. 349, 355–56 (W.D.Va.1996); *United States v. Bradley*, 880 F.Supp. 271, 290–91 (M.D.Pa. 1994); *United States v. Pitera*, 795 F.Supp. 546, 564–55 (E.D.N.Y.1992); *United States v. Pretlow*, 779 F.Supp. 758, 769–71 (D.N.J. 1991). Under the ADAA, 21 U.S.C. § 848(j), information at a sentencing hearing should be admitted unless its probative value is "substantially outweighed" by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Under the FDPA, 18 U.S.C. § 3593(c), by contrast, information may be excluded if its probative value is simply "outweighed" by the danger of unfair prejudice, confusion, or misleading the jury.

**4.** The statute further provides that
[t]he court of appeals shall address all substantive and procedural issues raised on the appeal of a sentence of death, and shall consider whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor and whether the evidence supports the special finding of the existence of an aggravating factor . . .
(2) Whenever the court of appeals finds that—
(A) the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
(B) the admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor; or
(C) the proceedings involved any other legal error requiring reversal of the sentence that was properly preserved for appeal under the rules of criminal procedure, the court shall remand the case for reconsideration under section 3593 or imposition of a sentence other than death. The court of appeals shall not reverse or vacate a sentence of death on account of any error which can be harmless, including any erroneous finding of an aggravating factor, where the government establishes beyond a reasonable doubt that the error was harmless.

lenges the appeal provision of the FDPA on various bases, all of which are rejected. First, he argues that rather than provide for mandatory automatic review, the statute places the burden on the defendant to file a notice of appeal. That requirement, he argues, "drastically undermines the heightened reliability standard required by the Constitution in capital cases." Mot. at 30. Although the Constitution requires meaningful appellate review in death penalty cases, *see Parker v. Dugger*, 498 U.S. 308, 321, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991); *Clemons v. Mississippi*, 494 U.S. 738, 749, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), and the Supreme Court of the United States has certainly favored mandatory appellate review, *Gregg*, 428 U.S. at 198, 96 S.Ct. 2909, there is no requirement that review be automatic. *See Davis*, 904 F.Supp. at 558. The burden of filing a notice of appeal is not an onerous one. The Court is confident Mr. Cooper's lawyers are ready, able and willing to file a notice of appeal should their client be convicted of a capital offense and sentenced to death.

■ Cooper next argues that the FDPA fails to provide review of unpreserved error under a plain error standard. However, there is nothing in the FDPA that would preclude plain error review. The statute provides for review of errors "properly preserved for appeal under the rules of criminal procedure." 18 U.S.C. § 3595(c). Fed.R.Crim.P. 52(b) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Supreme Court recently applied plain-error review to jury instruction challenge in an FDPA prosecution, holding that the FDPA "does not explicitly announce an exception to plain-error review, and a congressional intent to create such an exception cannot be inferred from the overall scheme." *See Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 2102, 144 L.Ed.2d 370 (1999).

18 U.S.C. § 3595(c).

■ Third, Cooper argues that the statute fails to provide for proportionality review. Proportionality review in capital cases requires an appellate court to determine whether or not the death sentence is "unacceptable in a particular case because [it is] disproportionate to the punishment imposed on others convicted of the same crime." *Pulley v. Harris*, 465 U.S. 37, 43, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Although the Supreme Court has extolled the virtues of proportionality review, *see Zant*, 462 U.S. at 890, 103 S.Ct. 2733; *Gregg*, 428 U.S. at 203, 96 S.Ct. 2909, it has made clear that proportionality review is not constitutionally required. *See Pulley*, 104 S.Ct. at 876 ("Examination of [*Gregg* and other] cases makes clear that they do not establish proportionality review as a constitutional requirement."). Moreover, there is nothing in the FDPA to prevent proportionality review should an appellate court choose to do so. *See McVeigh*, 944 F.Supp. at 1486; *Nguyen*, 928 F.Supp. at 1537; *Walker*, 910 F.Supp. at 850; *Bradley*, 880 F.Supp. at 284; *Pitera*, 795 F.Supp. at 559; *Pretlow*, 779 F.Supp. at 768–69.

■ Cooper's final challenge to the appellate process under the FDPA is that the remand provision violates double jeopardy principles. Section 3595(c) requires that if the court of appeals finds that a sentence of death was imposed under the influence of passion, prejudice or arbitrariness, or if admissible evidence does not support the finding of an aggravating factor, or if the proceedings involve any legal error, that the case be remanded to the trial court for "reconsideration under section 3593 [to determine if a sentence of death is justified] or imposition of a sentence other than death." 18 U.S.C. § 3595(c)(2)(B). Cooper argues that the entire statute should be invalidated because if the court of appeals finds that there was insufficient evidence to support the existence of an aggravating factor, a

remand to the district court for reconsideration under section 3593 would violate double jeopardy principles. He argues, "a finding that the evidence was insufficient is tantamount to an acquittal at the sentencing phase of trial and thus should bar a subsequent quest for the death penalty." Mot. at 51. The government agrees that double jeopardy may arise in a situation where the jury finds a sentence of death is justified in a case where the government alleges only one aggravating factor and the court of appeals invalidates that factor on the grounds that it has not been proven beyond a reasonable doubt. Govt.Opp. at 44.

Yet, the statute provides that the case shall be remanded *either* for reconsideration under section 3593 *or* imposition of a sentence other than death. *See* 18 U.S.C. § 3595(c). Presumably, in the scenario presented by the government, the case would be remanded for imposition of a sentence other than death. Because the FDPA allows for this alternative, the "statute does not compel an appellate court to violate double jeopardy and it will not be assumed that an appellate court would do so either." *Davis,* 904 F.Supp. at 563 (1995).

### D. Prosecutorial Discretion in Defining Non–Statutory Aggravating Factors

■ The FDPA provides that if a jury finds at least one statutory aggravating factor, it may consider non-statutory aggravating factors. These non-statutory aggravating factors are not enumerated in the statute, but are defined as "any other aggravating factor for which notice has been given." 18 U.S.C. § 3592(c). Cooper argues this statutory scheme is unconstitutional because it "authoriz[es] the government to unilaterally expand the statutory list of aggravating factors on a case-by-case basis [which] inject[s] into capital pro-

ceedings precisely the uncertainty and disparate case results that *Furman* [408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) ] found to violate the Eighth Amendment." Mot. at 34. Cooper's argument is unavailing. The purpose of the non-statutory aggravating factors is to provide for individualized sentencing. The Supreme Court has held that any decision to impose a death sentence must be individualized. "[T]he constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among [the class of eligible defendants narrowed by statutory aggravating factors] those defendants who will actually be sentenced to death ... [w]hat is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime." *Zant,* 462 U.S. at 878–79, 103 S.Ct. 2733.

Moreover, the government does not have unbridled discretion in devising non-statutory aggravating factors. The government must provide advance notice of the factors to be proved, *see* 18 U.S.C. § 3593(a)(2), and no information may be proffered during a sentencing phase if the Court finds "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). In addition, the Supreme Court's death penalty jurisprudence guides this Court in determining which aggravating factors may be used. For example, the government may not use non-statutory aggravating factors that are unconstitutionally vague, *see Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994), or overbroad. *See Jones,* 119 S.Ct. at 2108. The provision of the FDPA allowing for the use of non-statutory aggravating factors is not facially invalid. *See, e.g., Jones,* 132 F.3d at 239–40; *Frank,* 8 F.Supp.2d at 264–65.[5]

---

5. Cooper also argues that the FDPA violates the non-delegation doctrine because it gives prosecutors the power to define non-statutory aggravating factors. However, this argument

has been rejected by the United States Supreme Court and numerous lower federal courts. *See e.g., Loving v. United States,* 517 U.S. 748, 768, 116 S.Ct. 1737, 135 L.Ed.2d 36

## E. *Mitigating Evidence*

 Cooper argues the FDPA is unconstitutional because it limits his right to present mitigating factors in three respects. First, he asserts that the statute improperly places qualitative thresholds on the mitigating factors. The Court disagrees. Although the statute lists seven specific mitigating factors, some of which include a qualitative term, *e.g.,* "significantly impaired," "unusual and substantial duress," "significant prior history," "severe mental or emotional disturbance," the statute clearly states that the enumerated factors are not exclusive and *any* mitigating factor may be considered by the jury. *See* 18 U.S.C. § 3592(a) ("In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider *any* mitigating factor, including [the enumerated factors].") (emphasis added); 18 U.S.C. § 3592(a)(8) ("Other factors in the defendant's background, record, or character or any other circumstances of the offense that mitigate against imposition of the death sentence.").

 Second, Cooper asserts that the FDPA improperly precludes the jury from considering in mitigation the "defendant's religious beliefs or perhaps [any] racial discrimination to which the defendant has been subject." Mot. at 47. The FDPA, section 3593(f), entitled "special precaution to ensure against discrimination," requires the trial court to

> instruct the jury that, in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national

origin, or sex of the defendant or of any victim may be.

18 U.S.C. § 3593(f). The statute also requires the jury, if it decides in favor of a sentence of death, to provide a certification, signed by each juror, stating that the jury has complied with the Court's instruction. Cooper argues this statute improperly limits his right to "offer any evidence that is relevant and pertains to his character or background." Mot. at 47.

Some Courts have interpreted section 3593(f) as precluding jury consideration of race and other protected factors in aggravation, but not in mitigation. *See, e.g., Davis,* 904 F.Supp. at 563; *Nguyen,* 928 F.Supp. at 1547. However, in light of the Supreme Court's mandate in *Zant* that race be "totally irrelevant to the sentencing process," 462 U.S. at 318, 103 S.Ct. 2368, the Court agrees with Cooper that this interpretation may be problematic. As the Fifth Circuit recently noted, in order to pass constitutional muster, the FDPA must be interpreted to prohibit consideration of protected factors such as race, color, religion, gender, and national origin as either an aggravating or a mitigating factor during sentencing. *See U.S. v. Webster,* 162 F.3d 308, 355 (5th Cir. 1998). Nonetheless, neither the Constitution nor the FDPA precludes the jury from considering the "effects and experiences" of those factors:

> [A]lthough race *per se* is an irrelevant and inadmissible factor, the *effects and experiences* of race may be admissible [during sentencing]. If a defendant can show that his life has been marked by discrimination or some other set of experiences, irrespective of whether the result, in part, of his race [sic], then that properly might be admissible as relevant mitigating background or character evidence. But this is a far cry from using

(1996) (Congress permitted to delegate to the executive branch the authority to define aggravating factors that justify a sentence of death under the Uniform Code of Military Justice); *Jones,* 132 F.3d at 239–40; *United*

*States v. McCullah,* 76 F.3d 1087, 1106–07 (10th Cir.1996) (rejecting similar challenge in the context of the ADAA); *Tipton,* 90 F.3d at 895 (same); *Bradley,* 880 F.Supp. at 284; *Pitera,* 795 F.Supp. at 563 (E.D.N.Y.1992).

race in and of itself as a proxy for such a set of beliefs and experiences. Pigmentation does not define a person's character or background; the life that a person has led and the things that he has experienced do.

*Id.* at 356–57. Thus, far from being unconstitutional, the FDPA complies with the constitutional mandate that race be irrelevant during sentencing, while at the same time permitting the jury to hear mitigating evidence concerning the defendant's experiences resulting from his race, color, religion, national origin or gender, and the effect those experiences have had on his life.

■ Cooper's third challenge is that the FDPA is unconstitutional because it does not provide a standard for the jury to employ when balancing aggravating and mitigating factors. Under the FDPA, a sentence of death may be imposed only if "the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e). Cooper's argument is unavailing. The Supreme Court has repeatedly stated that so long as a capital sentencing scheme permits a jury to consider "relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime," the Constitution does not require that the jury "be instructed how to weigh any particular fact in the capital sentencing decision." *Tuilaepa*, 512 U.S. at 979, 114 S.Ct. 2630. *See also, Buchanan v. Angelone*, 522 U.S. 269, 276, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998) ("But we have never gone further and held that the state must affirmatively structure in a particular way the manner in which juries consider mitigating evidence. And indeed, our decisions suggest that complete jury discretion is constitutionally permissible."); *United States v. Chandler*, 996 F.2d 1073, 1092–93 (11th Cir.1993) (rejecting a similar challenge to the ADAA).

## F. Challenges to Certain Trial Procedures Contained in the FDPA

■ Cooper argues the FDPA impermissibly denies him the opportunity to rebut the government's evidence during the sentencing phase of the trial. The FDPA provides that the "government shall open the argument. The defendant shall be permitted to reply. The government shall then be permitted to reply in rebuttal." 18 U.S.C. § 3593(c). Without citing any authority, Cooper claims the "provision flies in the face of the Supreme Court's many pronouncements that death is different and that the procedures employed call for heightened reliability." Mot. at 49. The FDPA is consistent with federal practice and Fed.R.CrimP. 29.1 (governing the order of presentation of closing arguments). " 'Rule 29.1 does not establish a constitutional doctrine, but rather, provides a uniform rule of federal practice.' " *United States v. Garcia*, 94 F.3d 57, 63 (2d Cir.1996) (quoting *United States v. Byrd*, 834 F.2d 145, 147 (8th Cir.1987)). Because the government has the burden of proving aggravating factors beyond a reasonable doubt, it is appropriate that the government opens the argument at sentencing. *See United States v. Cooper*, 754 F.Supp. 617, 626, n. 17 (N.D.Ill.1990) (upholding a constitutional challenge to a similar ADAA provision).

■ Cooper next argues that the FDPA impermissibly prohibits him from waiving a jury trial on the issue of punishment without the government's consent. Section 3593(b) provides for judicial determination of the sentence "upon the motion of the defendant and with the approval of the attorney for the government." Cooper acknowledges that the Supreme Court has held that a criminal defendant does not have the unilateral right to waive a jury determination of guilt. *See Singer v. United States*, 380 U.S. 24, 37, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) ("A defendant's only constitutional right concerning the method of trial is to an impartial trial by

jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge . . . .").[6]

Nonetheless, Cooper argues that the determination of sentencing in a capital proceeding is one circumstance anticipated in *Singer* "where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial." *Id.* However, far from anticipating compelling circumstances where the defendant would be denied a fair trial if forced to proceed by jury, the *Singer* court simply stated it did not have to decide the issue. *See id.* Cooper argues two reasons why a defendant charged with a capital offense might want to waive his right to be sentenced by a jury: (1) improper racial considerations might seep into the jury's decision making process; and (2) the "capital defendant may feel that the jury that is ultimately impaneled will be less than sympathetic to the case for mitigation." Mot. at 50.

If the Supreme Court envisioned a circumstance where the defendant would be unable to obtain a fair trial by jury, it most likely was not the circumstance described by Cooper, which relate to the possibility of obtaining a biased jury. Although the *Singer* Court noted that the jury system has its weaknesses and the potential for misuse, the Court held that the trial by jury system "has been surrounded with safeguards to make it as fair as possible—for example, venue can be changed when there is a well-grounded fear of jury prejudice . . . and prospective jurors are subject to voir dire examination, to challenge for

cause, and to peremptory challenge." *Id.* at 35, 85 S.Ct. 783.

The Supreme Court has also expressed a strong preference for jury sentencing in capital cases. *See Gregg,* 428 U.S. at 193, 96 S.Ct. 2909 ("Jury sentencing has been considered desirable in capital cases . . . ."); *Witherspoon v. Illinois,* 391 U.S. 510, 519 n. 15, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) ("[O]ne of the most important functions any jury can perform in making such a selection [between a sentence of life or death] is to maintain a link between contemporary community values and the penal system—a link without which the determination of punishment would hardly reflect the evolving standards of decency that mark the progress of a maturing society.") (internal citations and quotations omitted). *See also, Spaziano v. Florida,* 468 U.S. 447, 476, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984) (Stevens, Brennan, Marshall, JJ.dissenting) ("[P]recisely because the death penalty is unique, the normal presumption that a judge is the appropriate sentencing authority does not apply in the capital context."). Cooper's position is at odds with the preference for jury sentencing expressed by the Supreme Court. This factor, coupled with the Supreme Court's pronouncement that a defendant does not have the constitutional right to waive a jury trial and insist on trial by a judge, clearly shows that Cooper's argument cannot prevail. *See Cooper,* 754 F.Supp. at 625 (rejecting challenge to similar provision in the ADAA).[7]

### G. The Indictment Clause

▮▮▮ Cooper argues that the FDPA violates the indictment clause of the Fifth Amendment because it permits the government to give notice of the intent ele-

---

**6.** *Singer* involved a constitutional challenge to Fed.R.Crim. P. 23(a) which states that "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government."

**7.** In any event, Cooper's argument is wholly abstract because he has not filed a motion for

a bench trial on either the question of innocence or guilt or for the sentencing determination in the event Cooper is found guilty of a capital offense. Therefore, it remains unknown whether the prosecuting attorney and this trial judge would consent to a bench trial.

ment it seeks to prove in support of the death penalty instead of requiring the grand jury to charge the intent element in an indictment. The Fifth Amendment states that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. amend. V.

Cooper relies solely on *Smith v. United States,* 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959). *Smith* involved a defendant who was charged with kidnaping, a crime which permitted a sentence of death if the prosecution proved at trial that the victim was released in a harmed condition. The defendant, who was rushed through the arrest process, waived indictment, and pleaded guilty to an information which charged him with kidnaping, but did not state whether the victim had been released harmed or unharmed. The defendant received a sentence of twenty years imprisonment. The Supreme Court held that because the kidnaping statute permitted a death sentence in certain circumstances (even if those circumstances did not apply in *Smith* ), the charge must be prosecuted by indictment pursuant to the Fifth Amendment and Fed.R.Crim.P. 7(a) ("An offense which may be punished by death shall be prosecuted by indictment.").

Cooper's argument is unpersuasive. *Smith* stands for the proposition that there must be a prosecution by indictment for a crime punishable by death even if the death penalty is not sought. It does not support Cooper's argument that the intent factors necessary to support a sentence of death, but not a conviction on the charge, must be included in the indictment. "An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second,

enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). The indictment against Cooper clearly satisfies this requirement. The intent requirement in the FDPA "does not concern the guilt or innocence of the defendant—it establishes no new elements of the crime of murder that must be found by the jury [and] 'does not affect the state's definition of any substantive offense, even a capital offense.' " *Cabana v. Bullock* 474 U.S. 376, 385 & n. 3, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), *abrogated on other grounds, Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (quoting *Reddix v. Thigpen,* 728 F.2d 705, 709 (5th Cir.1984)). Rather, the intent elements are aggravating factors to be considered at sentencing. An indictment does not require the enumeration of "sentencing factor[s] that come[ ] into play only after a defendant has been found guilty of one of those crimes beyond a reasonable doubt." *McMillan v. Pennsylvania,* 477 U.S. 79, 86, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *see also, Walton v. Arizona,* 497 U.S. 639, 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); *Buckley v. Butler,* 825 F.2d 895, 902–03 (5th Cir.1987); *U.S. v. Spivey,* 958 F.Supp. 1523, 1527 (D.N.M.1997).

### III. Challenges to the Government's Notice of Intent Under the FDPA

■ On February 14, 2000, the government filed a notice of intent to pursue the death penalty against Cooper as required under 18 U.S.C. § 3593(a). Cooper challenges several aspects of the notice of intent pertaining to the statutory and nonstatutory aggravating factors the government intends to prove during sentencing. Each argument is discussed below.[8]

---

**8.** Cooper, without citing any authority, also argues that the notice of intent should be dismissed because (1) the government has engaged in improper "forum shopping" by choosing to prosecute the Starbucks murders in federal court instead of the local court, and

(2) the decision of the Attorney General of the United States to seek the death penalty is "irrational, unconstitutional, arbitrary [and] capricious" because, among other things, she "disregarded the recommendation of the United States Attorney for the District of Co-

## A. Pecuniary Gain

The government lists in its notice of intent the statutory aggravating factor of pecuniary gain, i.e., that the "defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value." 18 U.S.C. § 3592(c)(8).[9] The government states this factor applies because Cooper allegedly killed the Starbucks victims during a botched robbery attempt. Cooper seeks to strike this factor from the notice of intent, arguing that it is improper here because Congress intended the provision to apply only to murder for hire schemes or other scenarios where the pecuniary gain was expected as a result of the victim's death.

Cooper's argument is two-fold. First, he argues that the pecuniary gain factor is overbroad in that if it is applied to all murders committed during robbery, it would fail to narrow the class of persons eligible for the death penalty. He argues that "[f]or the application of pecuniary gain to have any real limiting effect, the gain expected from the offense must be the gain from the victim's homicide, rather than just from the underlying felony." Reply at 8. Under Cooper's analysis, the subset of individuals who would fall under the umbrella of those committing crimes for pecuniary gain is smaller than any subset that included individuals who committed murder during the commission of robbery. However, the Supreme Court's jurisprudence on this issue is not based on the size of the subset of individuals eligible for a particular aggravating factor. Rather, it is based on whether or not the jury "fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty." *Arave v. Creech*, 507 U.S. 463, 474, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). As long as there are defendants convicted of capital of-fenses who were not motivated by pecuniary gain when they committed a capital murder offense, the use of the pecuniary gain factor narrows the class of individuals eligible to receive the death penalty for that factor. *See Jones*, 119 S.Ct. at 2108 (applying the same analysis to victim impact testimony).

Cooper next argues that if Congress intended the pecuniary gain factor to apply to robberies, it would have included robbery specifically in the enumerated statutory aggravating factors outlined in section 3592(c)(1). Cooper's argument is unpersuasive. As the *Nguyen* and *Walker* courts noted, the statute contains two clauses. The first, that the defendant "committed the offense as consideration for the receipt . . . of anything of pecuniary value" applies to murder-for-hire. The federal murder-for-hire statute, 18 U.S.C. § 1958(a), defines murder-for-hire "as consideration for the receipt of . . . anything of pecuniary value." Thus, Congress tracked the language of the first clause in the FDPA pecuniary gain section against the language contained in the murder-for-hire statute. But Congress did not stop there. The FDPA pecuniary gain factor contains a second clause, "or in expectation of the receipt, of anything of pecuniary value." This clause means something other than murder for hire. *See Nguyen*, 928 F.Supp. at 1534–36 and *Walker*, 910 F.Supp. at 848–49. *Accord, United States v. Wicklund*, 114 F.3d 151, 153–54 (10th Cir.1997) (interpreting the murder-for-hire statute as requiring consideration in the contract sense, and citing *Walker* for the proposition that if Congress wanted the murder for hire statute to encompass "expectation of pecuniary gain" it would have drafted it to do so). *But see, Davis*, 904 F.Supp. at 558 (stating in dicta that "the Court finds nothing vague or overly broad about a murder-for-hire which is in es-

lumbia [and the] sentiment of the citizens of the District of Columbia." The Court has considered these arguments and rejects them.

**9.** The only other statutory aggravating factor alleged by the government is the existence of multiple killings or attempted killings. This factor is addressed *infra* at n. 13.

sence what § 3592(c)(8) describes"). There is no reason to believe that Congress did not intend this clause to apply to murders occurring during the course of robbery. *See Nguyen,* 928 F.Supp. at 1534–36 and *Walker,* 910 F.Supp. at 848–49.

Cooper argues "there was no money taken from the Starbucks coffee shop on the evening of the murders, and the expectation of gain was from the robbery not the homicides, there is no evidence upon which a jury can conceivably conclude that there was a pecuniary gain from the deaths of the three decedents." Reply at 8. The Court disagrees. The Ninth Circuit recently upheld on a habeas petition the application of a similar pecuniary gain factor to a murder occurring during a botched robbery where the victim was unable to open the safe. *See LaGrand v. Stewart,* 133 F.3d 1253 (9th Cir.1998).[10] In that case, the Arizona Supreme Court described the events as follows:

> [T]he attempted robbery permeated the entire conduct of the defendant. The defendant may have reacted irrationally to the failure or the inability of the victim to open the safe but the murder was neither accidental nor unexpected. The reason defendant was there was his expectation of pecuniary gain and the reason he stabbed the victim was because the victim was unable to open the safe, frustrating defendant's continuing attempt for pecuniary gain. The defendant's goal of pecuniary gain caused the murder and murder was in furtherance of his goal. We agree with the trial court's finding that the expectation of pecuniary gain was an aggravating factor.

*Id.* at 1260 (citing *State v. LaGrand,* 153 Ariz. 21, 36, 734 P.2d 563 (1987)). The Ninth Circuit agreed, stating that on those facts, "a rational sentencer could have

found the existence of the pecuniary gain aggravating factor." *LaGrand,* 133 F.3d at 1260. This Court agrees.

*B. Uncharged Criminal Activity and Obstruction of Justice*

In its notice of intent, the government lists "other criminal activity" and "obstruction of justice" as non-statutory aggravating factors. The notice states "[i]n addition to the capital offenses charged ... in the indictment, the defendant has engaged in a continuing pattern of criminal conduct. That pattern of criminal conduct includes one or more of the following acts that were undertaken by the defendant." The notice then lists the seven racketeering acts charged in the indictment, as well as seventeen other crimes involving robbery, shootings and handgun offenses, which have not been adjudicated. A separate category entitled "obstruction of justice," claims "[t]he defendant obstructed and attempted to obstruct the investigation and prosecution of his criminal activities. This is shown by facts including, but not limited to, one or more of the following." The notice then proceeds to allege various acts by Cooper to threaten witnesses and law enforcement officers.

 Cooper argues that the unadjudicated criminal and obstruction of justice activity should not be admissible in a capital sentencing proceeding because the use of these crimes would violate the Fifth, Fourteenth and Eighth Amendments. Cooper also argues that in the event the use of these crimes is constitutional, the Court should either strike them as unreliable, or rule that evidence to support the allegations must be proven beyond a reasonable doubt.

Numerous federal courts (and the majority of the states) considering the matter have held that the use of unadjudicated criminal activity (the Court assumes this

---

**10.** Under Arizona statute A.R.S. § 13–703(F)(5), the aggravating factor of pecuniary gain exists if "the defendant committed the offense as consideration for the receipt, or in

expectation of the receipt of anything of pecuniary value." This is the same language contained in the FDPA.

includes obstruction of justice) is constitutionally permissible in a capital sentencing hearing. *See, e.g., Eaton v. Angelone,* 139 F.3d 990, 998 (4th Cir.1998) ("Courts have routinely considered evidence of prior unadjudicated acts in assessing future dangerousness."); *Williams v. Lynaugh,* 814 F.2d 205 (5th Cir.1987) (stating that evidence of unadjudicated crimes is relevant to determination of whether defendant would continue to commit acts of violence and "admission of unadjudicated offenses in the sentencing phase of a capital trial does not violate the [Constitution]"); *McDowell v. Calderon,* 107 F.3d 1351, 1366 (9th Cir.1997), *vacated in part on other grounds,* 130 F.3d 833 (9th Cir.1997) (en banc) ("The introduction of [unadjudicated criminal conduct] during the penalty phase of a capital case does not necessarily violate a defendant's rights under the Eighth or Fourteenth Amendments or render a death sentence unreliable."); *Hatch v. State,* 58 F.3d 1447, 1465 (10th Cir.1995) ("[T]he admission of evidence of unadjudicated offenses at a sentencing proceeding does not violate due process."); *Devier v. Zant,* 3 F.3d 1445, 1464–65 (11th Cir.1993) ("[I]t is acceptable to consider evidence of crimes for which a defendant has been indicted but not convicted. Activities for which there has been no charge filed can be considered as well."); *United States v. Beckford,* 964 F.Supp. 993, 998 (E.D.Va. 1997) (citing cases) ("Numerous district courts and courts of appeals also have determined that unadjudicated criminal acts are not per se inadmissible."). This Court will follow the courts that have already ruled on this issue, as well as the holdings of the Supreme Court of the United States that appear to support this position. *See Nichols v. United States,* 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) ("Sentencing courts have not only taken into consideration a

defendant's prior conviction, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior."); *Barefoot v. Estelle,* 463 U.S. 880, 898, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) (stating that "relevant, unprivileged evidence should be admitted and its weight left to the fact finder, who would have the benefit of cross-examination and contrary evidence by the opposing party."); *Williams,* 337 U.S. at 251–52, 69 S.Ct. 1079 (stating that it was constitutionally permissible for a sentencing judge to consider evidence of unadjudicated burglaries in capital sentencing proceeding).[11]

▇▇ Having ruled that the use of unadjudicated criminal activity during sentencing does not violate the Constitution, the Court must consider (1) whether the evidence is reliable and, if so, (2) the standard by which the state must prove the unadjudicated criminal conduct. The Court is concerned about the reliability of this evidence, especially given the heightened need for reliability in capital cases, *e.g., Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and the government's indication that it intends to use the evidence to show that the defendant is more deserving of the death penalty because of these alleged crimes. Opp. at 55 ("The probative value of [the evidence concerning unadjudicated criminal activity] is its effect of individualizing the sentencing decision. Common sense suggests that evidence that a defendant has committed criminal acts in addition to the charged capital crimes makes that defendant more deserving of the death penalty than a capital defendant who has never before committed another criminal act.").

The government's notice of intent lists five categories of non-statutory aggrava-

---

11. Cooper also argues that the use of non-statutory aggravating factors, including unadjudicated criminal conduct, violates the ex post facto clause of the Constitution. This Court agrees with the numerous courts that have considered and rejected this argument.

*See, e.g., Glover,* 43 F.Supp.2d 1217, 1230 (D.Kan.1999); *Frank,* 8 F.Supp.2d at 267; *Nguyen,* 928 F.Supp. at 1537–38; *Bradley,* 880 F.Supp. at 284; *DesAnges,* 921 F.Supp. at 354–55; *Spivey,* 958 F.Supp. at 1534; *Pitera,* 795 F.Supp. at 563–64.

ting factors: (1) victim impact; (2) other criminal activity (including the nonadjudicated activity); (3) obstruction of justice; (4) leadership role; (5) future dangerousness of the defendant. In the heading of future dangerousness, the notice states that the circumstances demonstrating the future dangerousness include "the defendant's continuing pattern of violent, criminal conduct; his continuous efforts to obstruct justice and threaten witnesses; his tendency to adopt a leadership role...." Thus, it appears that the government intends to prove the first four non-statutory factors as individual aggravating factors in and of themselves and also as evidence supporting the claim of future dangerousness.

Although past criminal behavior (including obstruction of justice allegations) may be used as both aggravating factors in of themselves and also as indicators of future dangerousness, *see Frank*, 8 F.Supp.2d at 279, if the government intends to use the evidence as aggravating factors in and of themselves, the government will have to prove such acts beyond a reasonable doubt. *See Beckford*, 964 F.Supp. at 1008; *McVeigh*, 944 F.Supp. at 1491. The fact that all of this conduct is listed by the government as "evidence in support of," Opp. at 75, other criminal activity or obstruction of justice does not change the analysis. The jury will still be weighing the conduct itself, for it cannot find beyond a reasonable doubt that Cooper "engaged in a pattern of criminal conduct" or that he obstructed justice if it does not first find that he committed the underlying crimes beyond a reasonable doubt. Any conduct that is specifically weighed in a capital punishment regime must be proven beyond a reasonable doubt.[12] The Court will hold a hearing on April 18, 2000 at 10:30 a.m. to consider whether and to what extent the unadjudicated conduct and obstruction of justice evidence should be admitted, as well as the defendant's request for a pre-trial evidentiary hearing on the unadjudicated conduct, the defendant's February 28, 2000 motion for discovery and inspection of information concerning unadjudicated conduct, the defendant's March 28, 2000 motion in limine seeking a ruling concerning the admissibility of the unadjudicated criminal conduct, the government's notice of 404(b) evidence, and the government's notice of additional uncharged crimes.

## C. Aggravating Factors that Duplicate Crimes Charged in Indictment

Included within the umbrella of "other criminal activity" in the government's notice of intent are the seven charged racketeering acts contained in the indictment. Cooper alleges that the inclusion of these charges as an aggravating factor would result in an improper weighing of crimes for which the defendant would have already been found guilty and would thus give the government an "automatic[ ] de facto aggravating factor." Reply at 10. The Court disagrees.[13] There

---

**12.** The Court recognizes that at least one court has held that unadjudicated crimes used as evidence to support a claim of future dangerousness do not necessarily require proof beyond a reasonable doubt. *See Beckford*, 964 F.Supp. at 1001. With future dangerousness, the jury determines beyond a reasonable doubt, after considering many factors, including unadjudicated conduct, whether the defendant would present a future danger were he not sentenced to death. The jury is instructed to weigh the aggravating factor of future dangerousness, not the combined activities that support the claim of future dangerousness. This is significantly different from the jury being instructed to weigh the defen-

dant's criminal history. If the government intended to use the unadjudicated crimes *only* as evidence supporting future dangerousness (and not also as factors in and of themselves), the standard of proof might be something less than beyond a reasonable doubt.

**13.** Cooper makes a similar "de facto aggravator" argument to strike the government's notice of intent as to the statutory aggravating factor of multiple killings or attempted killings. Section 3592(16) lists as a statutory aggravating factor the fact that "the defendant intentionally killed or attempted to kill more than one person in a single criminal episode." Cooper argues that if he "is found

is nothing wrong with permitting the jury during sentencing to consider crimes for which Cooper has been found guilty beyond a reasonable doubt. As the *Frank* court observed, "once the penalty phase has begun, the jury is asked to consider only once the fact that [other crimes have been committed by the defendant]. That the jury may find it relatively easy, based on its guilty verdict, to find the existence of this factor does not unfairly tip the scales toward death." *Frank*, 8 F.Supp.2d at 276.[14] Rather than allow the jurors to speculate during sentencing how or whether it should consider other crimes for which it has already found Cooper guilty beyond a reasonable doubt, the Court will instruct them that these crimes may be weighed in aggravation as evidence of prior criminal activity. Of course, if the jury finds Cooper not guilty of any of the seven offenses charged in the indictment, the jury can not consider that offense in aggravation and the offense must be struck from the government's notice of intent. *See McVeigh*, 944 F.Supp. 1478 (noting that permitting the jury to find as an aggravating factor an offense for which the defendant has been acquitted would result in an inconsistent verdict).

## D. Intent Factors

 Before the jury may consider aggravating factors in determining whether a sentence of death is justified, the FDPA requires the jury to find that the defendant (1) intentionally killed the victim, (2) intentionally inflicted serious bodily injury that resulted in the death of the victim, (3) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used, and the victim died as a result, or (4) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, such that participation in the act constituted a reckless disregard for human life and the victim died as a result. *See* 18 U.S.C. § 3591(a)(2). Cooper complains that the government's "notice [of intent to seek the death penalty] attributes four separate mental states to Mr. Cooper but does not specify which particular mental state occurred at the time the capital eligible offenses occurred." Without citing any case authority, he argues that the "Fifth and Eighth Amendments to the United States Constitution require that the government elect which mental state it contends motivated [Cooper's] conduct and hence qualifies [Cooper] for the sentence of death." Mot. at 74.

If the jury were permitted to find that more than one of the intent factors in section 3591(a)(2) existed, and then was subsequently permitted to weigh those factors as aggravating circumstances, this Court might agree with Cooper. In *United States v. Tipton*, the Fourth Circuit held it was error for the trial court to instruct the jury that it must find "at least one" of the statutory intent elements listed in the ADAA. 90 F.3d 861 (4th Cir.1996). Under the ADAA, the four intent elements (which are similar to the ones enumerated in the FDPA) are aggravating factors and are considered with other aggravating factors when weighed by the jury against mitigating factors. The jury in *Tipton*, which recommended a death sentence, found that all four intent circumstances existed and then weighed all four with the other aggravating factors found to exist.

---

guilty of the Starbucks homicides, the jury must automatically conclude that the aggravating factor of multiple killings as been met." The Court rejects this argument essentially for the same reasons she rejects Cooper's arguments that the seven charged offenses in the indictment are "de facto aggravators."

**14.** The *McVeigh* court found differently and held that "the government may not introduce those offenses as aggravating factors that duplicate the crimes charged in the indictment. To allow the jury to weigh as an aggravating factor a crime already proved in a guilty verdict would unfairly skew the weighing process in favor of death." *McVeigh*, 944 F.Supp. at 1489–90.

The Fourth Circuit held that "[t]o allow cumulative findings of these intended alternative circumstances, all of which do involve different forms of criminal intent, runs a clear risk of skewing the weighing process in favor of the death penalty and thereby causing it to be imposed arbitrarily, hence unconstitutionally." *Id.* at 899. The Court noted that a proper instruction would have advised the jury that it could only find one of the intent factors as a basis for its findings. *See id.; see also U.S. v. McCullah,* 76 F.3d 1087, 1111 (10th Cir.1996).

The FDPA differs from the ADAA in that the intent elements are not aggravating factors to be weighed against mitigating factors. If the jury finds one or all four of the factors, there is no risk of skewing because the jury finds intent, and then starts with a clean slate in evaluating separate aggravating factors. *See Webster,* 162 F.3d at 355 ("[Section] 3591(a) does not set forth aggravating factors, but rather serves as a preliminary qualification threshold. The fact that a defendant could satisfy more than one of these via the same course of action does not, therefore, constitute impermissible double counting."). Cooper's argument is unavailing.

### E. Victim Impact

█ The government's notice of intent lists three victim impact aggravating factors pertaining to each of the three victims of the capital offenses. The victim impact statements are the same for the three victims, except the name of the victim and the family members differ. For example, the victim impact statement for Emory Allen Evans, is as follows:

> The defendant caused injury, harm and loss to the friends and family of Emory Allen Evans because of Emory Allen Evans' personal characteristics as an individual human being and the impact of his death upon those persons. Emory

Allen Evans was a beloved member of a family that included a father, a mother, a stepfather, a stepmother and four sisters, who have deeply missed his companionship, love and support since his death. The government will present information concerning the effect of the offense on Emory Allen Evans and his family, which may include oral testimony, a victim impact statement that identifies Emory Allen Evans as the victim of the offense and the extent and scope of the injury and loss suffered by Emory Allen Evans and his family, and any other relevant information.

Notice of Intent at 4.

Cooper argues that these statements are "set forth in broad, conclusory and utterly vague sentences. Indeed, even though the decedents were three separate individuals from three separate environments, the language as to the impact upon the individual families is virtually identical in each instance." Mot. at 75.

The FDPA states that victim impact evidence may be used as a non-statutory aggravating factor. *See* 18 U.S.C. § 3593(a) ("The factors for which notice may be provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information."). The Supreme Court recently held, in an FDPA case challenging victim impact evidence as overbroad and vague, that the Constitution permits evidence "concerning the victim's personal traits and the effect of the crime on her family ... so long as ... victim impact factors are used to direct the jury to the individual circumstances of the case." *Jones,* 119 S.Ct. at 2105.[15] *See also Payne v.*

---

**15.** Victim impact was defined in the Special Findings form in *Jones* as: "3(C). [The victim]'s personal characteristics and the effect · of the instant offense on [the victim]'s family constitute an aggravating factor of the offense." *Id.* at 2097 n. 3. Also at issue in *Jones*

*Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) ("A State may legitimately conclude that evidence about the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.").

Neither *Payne,* nor the FDPA, nor the state of the present record provides the Court with guidance on the proper scope and limit of victim impact evidence. "That is a matter for the Court's discretion and must be determined with consideration for the constitutional limitation that the jury must not be influenced by passion or prejudice." *McVeigh,* 944 F.Supp. at 1491 (citing *Payne,* 501 U.S. at 825, 111 S.Ct. 2597). Absent more information, the Court is not in a position at this juncture to evaluate such evidence. Indeed, the government's notice of intent contains no specific information concerning the evidence it seeks to introduce. The Court agrees with Cooper that the notice of intent fails to give sufficient notice to the defendant on this issue. *See McVeigh,* 944 F.Supp. at 1488 ("The notice filed by the government gives the defendants the opportunity to prepare for the hearing and provides the court with some frame of reference for ruling on objections to the information offered at the hearing."). Therefore, the government shall amend its notice of intent by April 19, 2000 to include more specific information concerning the extent and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals, and as to each victim's "personal characteristics" that the government intends to prove. *See Glover,* 43 F.Supp.2d at 1225 (ordering the government to amend its notice of intent concerning victim impact evidence). The Court will evaluate the admissibility of the victim impact evidence at a later date.

## F. Future Dangerousness

The government has listed future dangerousness as an aggravating factor in its notice of intent. Cooper argues that the government's evidence should be limited to Cooper's future dangerousness within the context of serving a life sentence in the custody of the Bureau of Prisons.[16] The Court agrees.

In *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), the Supreme Court held that when a defendant is ineligible for parole and the government uses the defendant's future dangerousness as an aggravating factor, due process requires the jury to be informed that if it does not sentence the defendant to death the defendant will spend the rest of his or her life in jail. The parties agree that Cooper is entitled to make such a showing in this case.[17] The government argues that the evidence contained in its notice of intent concerning future dangerousness is "probative of the defendant's tendency toward future violent conduct, regardless of whether he will be incarcerated or not and regardless of the capacity of the prison system to restrain that violent tendency." Opp. at 69. However, whatever violent or criminal capabili-

---

was the aggravating factor of the victim's vulnerability: her "young age, her slight stature, her background, and her unfamiliarity with San Angelo, Texas." *Id.*

16. The Court rejects Cooper's statutory construction argument that because Congress did not include future dangerousness in the list of statutory aggravating factors, it meant to preclude it as a non-statutory aggravating factor. *See, e.g., Frank,* 8 F.Supp.2d at 279; *Spivey,* 958 F.Supp. at 1534; *Glover,* 43 F.Supp.2d at 1227.

17. 18 U.S.C. § 3594 states "[U]pon a recommendation [from the jury] that the defendant should be sentenced to death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly. Otherwise, the court shall impose any lesser sentence that is authorized by law. Notwithstanding any other law, if the maximum term of imprisonment for the offense is life imprisonment, the court may impose a sentence of life imprisonment without the possibility of release."

ties Cooper has outside the prison walls has no probative value when, if not sentenced to death, Cooper will spend the rest of his life in prison if convicted of a capital offense. Most of the information the government seeks to present under the umbrella of future dangerousness will have already been presented as independent aggravating factors. Thus, the jury will have already considered the information as aggravating factors in other contexts. The government will not be prejudiced by confining the information pertaining to future dangerousness as a separate aggravating factor to Cooper's potential behavior in prison. On the other hand, the defendant will be severely prejudiced by the possibility that if the government argues that Cooper is a danger both on and off the streets, the jury will speculate that Cooper could be released if he were not sentenced to death. The government will be permitted to introduce evidence of future dangerousness only as it pertains to any threat Cooper may present if he is sentenced to life imprisonment without the possibility of release.

### G. Lack of Remorse

▮▮▮ In its notice of intent, the government states that it intends to introduce evidence of the defendant's "consistent lack of remorse for the damage and suffering caused by his criminal activities" to support the aggravating factor of future dangerousness. Notice of Intent at 12–13. The evidence the government intends to introduce to support its claim includes "Cooper's insistence on committing crimes after prior arrests and convictions; Cooper's statements to witnesses that reflect the pride he took in committing robberies and murders; Cooper's repeated attempts during his interviews with the police to place the blame for his crimes on others; Cooper's unwillingness to acknowledge in his post-arrest statements that he is blameworthy for the crimes to which he admitted." Opp. at 66.

Cooper objects to the use of lack of remorse evidence on the grounds that the vague allegations "violate[ ] both [his] Fifth Amendment right to remain silent and his Sixth Amendment right to trial because it imposes an impermissible penalty upon the exercise of those rights." Mot. at 84. As the Court stated in *Davis*,

Lack of remorse is a subjective state of mind, difficult to gauge objectively since behavior and words don't necessarily correlate with internal feelings. In a criminal context, it is particularly ambiguous since guilty persons have a constitutional right to be silent, to rest on a presumption of innocence and to require the government to prove their guilt beyond a reasonable doubt. To allow the government to highlight an offender's "lack of remorse" undermines those safeguards.

*Davis,* 912 F.Supp. 938, 946 (E.D.La.1996). Although the *Davis* court did not allow the government to use the evidence of defendant's "alleged jubilation in learning that [his victim] had been killed" as an independent non-statutory aggravating factor, it did permit the lack of remorse evidence to be used as probative of future dangerousness. *See also, Walker,* 910 F.Supp. at 855 ("While nothing precludes the introduction of either [defendant's statement while incarcerated that he "killed the motherf***er" or defendant's statement to the judge at an earlier sentencing for a robbery conviction that "I'll be back"] at trial or sentencing, under this Court's more prejudicial than probative balancing, such allegations simply will not bear the weight of being singled out in the government's notice of intent to seek the death penalty and presented to the jury as nonstatutory aggravating factors.").

There does not appear to be a constitutional ban on the use of lack of remorse evidence as an aggravating factor. In *Zant,* the Supreme Court stated that "[a]ny lawful evidence which tends to show the motive of the defendant, his lack of remorse, his general moral character, and

his predisposition to commit other crimes is admissible in aggravation." 462 U.S. at 885 n. 22, 103 S.Ct. 2733 (quoting *Fair v. State,* 245 Ga. 868, 268 S.E.2d 316, 321 (1980)); *Nguyen,* 928 F.Supp. at 1541. The evidence is, however, subject to scrutiny to ensure that it is relevant, reliable, and its probative value outweighs any danger of unfair prejudice, confusion, or misled jury. The Court agrees with Cooper that some of the proffered evidence has a substantial possibility of encroaching on the defendant's constitutional right to remain silent. As such, the government will not be permitted to introduce evidence concerning Cooper's alleged "unwillingness to acknowledge in his post-arrest statements that he is blameworthy for the crimes to which he admitted." Opp. at 66. As to other lack of remorse evidence that does not encroach on the defendant's right to remain silent, such evidence, as it pertains to Cooper's future dangerousness while in prison, will be allowed if the Court determines at trial that the evidence is reliable and is not outweighed by the risk of unfair prejudice to the defendant, or the risk that it would confuse or mislead the jury.

## IV. Challenges to the Government's Decision to Pursue the Death Penalty

On February 7, 2000, the government orally announced its decision to pursue the death penalty, and then followed up with a written notice of intent on February 14, 2000. The government states that it followed the death penalty protocol contained in § 9–10.000 *et seq.* of the United States Attorney's Manual. "The protocol provides for centralized review of any death penalty decision made by attorneys acting on behalf of the United States." *In re United States,* 197 F.3d 310, 311 (8th Cir. 1999). When a federal indictment charges a capital count, the United States Attorney (in this case, Wilma A. Lewis) completes a death penalty evaluation form and prosecution memorandum including an introduction of the case, the facts and evidence, including evidence relating to aggravating and mitigating factors, the defendant's background and history, the basis for federal prosecution and other relevant information. *See* United States Attorney's Manual § 9–10.040. The form and memorandum, together with the indictment, written materials and evidence submitted by defense counsel, and other significant documents, are then forwarded to the Assistant Attorney General for the Criminal Division of the United States Department of Justice. *See id.* The documents are then reviewed by a committee appointed by the Attorney General of the United States. The committee makes a recommendation to the Attorney General, who makes the final decision whether the government should file a notice of intent to seek the death penalty. *See id.* at § 10.050. Cooper does not raise a constitutional or other challenge to the death penalty protocol. Instead, he challenges the government's decision to pursue the death penalty on two grounds. First, he argues that because the United States Attorney for the District of Columbia recommended against imposition of the death penalty, the contrary decision by the Attorney General of the United States was a violation of the statute.[18] Second, he argues that the

18. The Court has not been advised of the official source of the defendant's information that United States Attorney Wilma A. Lewis recommended against imposing the death penalty. The defendant has filed a motion to compel disclosure of Ms. Lewis' recommendation and supporting documentation arguing that "unless these materials are disclosed, the Court will be unable to make a reliable determination of whether the process under which Mr. Cooper may be sentenced meets" constitutional standards. Mot. at 2. For reasons that are evident in this Memorandum Opinion and Order, Cooper's motion is denied. Cooper also argues that "if the Court finds that disclosure of the materials is not warranted, the Court should review these materials [in camera] to determine if they contain exculpatory information." Mot. at 2. The government must recognize its obligations in this regard and the results should it fail to scrupulously meet those obligations. The Court has

decision by the Attorney General to pursue the death penalty may have been based on an unconstitutional discriminatory intent.

### A. Statutory Violation

■ The FDPA provides that "if the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified, the attorney shall, a reasonable time before the trial" file a notice of intent. 18 U.S.C. § 3593(a). Cooper argues that "the attorney for the government" is United States Attorney Wilma A. Lewis and, because Ms. Lewis recommended against the death penalty, the "views of the 'attorney for the government' were not afforded the decisive weight that the statute demands." Mot. at 3. In support of his position that Ms. Lewis is the "attorney for the government," Cooper relies on LCrR 44.5(e), which states

> Upon the return of an indictment or bill of information, the United States shall designate an Assistant United States Attorney or other attorney of the Department of Justice as its representative. The United States Attorney shall advise the Clerk and the judge to whom the case is assigned regarding any change in the attorney for the United States responsible for the prosecution.

He argues that the "Attorney General, for the purpose of this or any other criminal case in this court, is not the 'attorney for the government' as clearly cited in 18 U.S.C. § 3593 and defined by Local Rule 44.5(e)." Reply at 14. Cooper's argument, while creative, fails precisely for the reasons stated by the government. LCrR 44.5 is captioned "Entry and Withdrawal of Appearance by Attorneys in Criminal Actions." Appearances have been entered in this case by Assistant United States Attorney Kenneth L. Wainstein and Assistant United States Attorney Mary Incontro. Thus, the "attorney for the govern-

ment" for purposes of LCrR 44.5(e) is Mr. Wainstein and Ms. Incontro and not Ms. Lewis. Cooper's argument that Mr. Wainstein and Ms. Incontro "are merely the instrumentalities by which [Ms. Lewis] operates" actually supports the government's position. Obviously Ms. Lewis cannot personally appear in every single criminal case in this district court. The rule simply requires the United States to appoint an Assistant United States Attorney or "other attorney of the Department of Justice as its representative." This person becomes the "attorney for the government" for purposes of appearing on behalf of the United States in this district court. Rule 44.5(e) can not be used to define the meaning of "attorney for the government" in connection with a statute of the United States, or to interfere with the institutional processes of the United States government as a single entity. As the government notes, "to the extent that Section 3593 contemplates certification by a particular individual attorney, the statute simply requires the attorney of record for the government to certify that it is the institutional belief of the government, by virtue of its internal decision-making process, that it is appropriate to seek the death penalty." Opp. at 87 (citing *Jones v. United States*, 119 S.Ct. at 2096 (recognizing that under the FDPA, it is "the government" that has the discretion to seek the death penalty)). For the reasons stated, Defendant's Motion to Strike Notice of Intent to Seek the Death Penalty for Violation of 18 U.S.C. § 3593 And For Discovery and Issuance of Subpoenas is denied.

### B. Constitutional Violation

Cooper argues he was selected for prosecution under the FDPA "for racially discriminatory purposes." Mot. at 2. Cooper is a black male; the victims of the alleged capital crimes are a black male, a white

---

repeatedly stated that she has full confidence the government has complied and will continue to comply with its *Brady* obligations. The Court declines to look over the prosecutor's

shoulder when there is no indication that the government has not complied with its *Brady* obligations.

female, and a white male. The incident took place in Georgetown, which, according to Cooper, is a predominately white neighborhood. In addition to seeking a dismissal of the notice of intent as violating the Constitution, Cooper, recognizing that he has insufficient evidence to support his motion, seeks discovery and a hearing so that he may obtain evidence to support his motion to dismiss the notice of intent.

 To prevail on a claim for selective prosecution, a defendant must show that the decision to prosecute had both a discriminatory effect and a discriminatory intent. *See United States v. Armstrong,* 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). A discriminatory intent is demonstrated by the existence of racial animus. The defendant must show that "decisionmakers in *his* case acted with discriminatory purpose." *McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (emphasis in original). A discriminatory effect is demonstrated by establishing that "similarly situated individuals of a different race were not prosecuted." *Id.* at 465, 116 S.Ct. 1480.

 If the defendant seeks to obtain discovery to prove a claim for selective prosecution, he or she must first establish a "colorable" claim of selective prosecution. *See Attorney General of the United States v. Irish People, Inc.,* 684 F.2d 928, 948 (D.C.Cir.1982); *United States v. Diggs,* 613 F.2d 988, 1003–04 (D.C.Cir.1979). In addition, the "evidence [must be] specific to [the defendant's] own case that would support an inference that racial considerations played a part" in the prosecutor's decision to seek the death penalty. *McCleskey,* 481 U.S. at 292–93, 107 S.Ct. 1756.

In support of his motion, Cooper submits the following evidence. He states that in 1997, the year in which the alleged capital offenses occurred, there were 301 homicides in the District of Columbia. Of that number, five homicides, or 1.6% of the total homicides, occurred in the Second

Police District (the site of the Georgetown Starbucks). According to Cooper, the "bulk of the non-minority population of the District [of Columbia] lives in the 2nd Police District." Mot. at 4. From this, Cooper concludes that the government is utilizing the death penalty on behalf of 60% of those who died in the Second Police District (the predominately white district), and only .9% of the total homicides in 1997, the majority of which occurred in predominately minority districts. Cooper also argues that "upon information and belief" there has been only one other case in addition to Cooper's case (the Donzell M. McCauley case) where the Attorney General of the United States disagreed with the United States Attorney for the District of Columbia and elected to pursue the death penalty contrary to the United States Attorney's recommendation. Cooper deems it significant that in both of those cases the defendant was black and the victims—with the exception of one black victim in the Starbucks incident—were white.

Cooper's analysis is flawed. First, the fact that the Attorney General disagreed with the United States Attorney in two cases is irrelevant. Although a committee appointed by the Attorney General must review the recommendation and submissions by the United States Attorney, the final decision as to whether or not to seek the death penalty is made by the Attorney General of the United States. *See* United States Attorney's Manual § 9–10.050 ("Each of the documents [provided by the United States Attorney] shall be reviewed by a Committee appointed by the Attorney General, ... [t]he Attorney General will conduct a review [from the recommendation made by her Committee] and make the final decision whether the Government should file a "notice of Intention to Seek the Death Penalty."). There is no allegation here that the Attorney General or her Committee did not consider the United States Attorney's recommendation. Second, the fact that the government did not seek the death penalty "for any of the

remaining 298 persons who died in 1997" shows nothing. Aside from the fallacy of relying on single year statistics, Cooper fails to indicate how many of those 298 homicides in the District of Columbia were eligible for capital prosecution under federal law. As the government notes, "the vast majority of the 301 murders [in 1997] were not prosecutable under a federal capital statute." Govt.Opp. at 103 n. 48. Second, of the homicides that were eligible for federal capital prosecution, Cooper fails to state how many times the Attorney General declined to seek the death penalty.[19] Most important is the fact that Cooper fails to state how this alleged lack of prosecution for supposedly capital crimes in 1997 has anything to do with the Attorney General's decision to seek the death penalty against him. Cooper can not demonstrate a "colorable claim" for selective prosecution with random, incomplete statistics from a single year which, aside from failing to show colorable evidence of racial disparity, have nothing to do with the Attorney General's decision to seek the death penalty in Cooper's individual case. *See generally, McCleskey* 481 U.S. at 297, 107 S.Ct. 1756. Although in *Bradley,* 880 F.Supp. 271 (M.D.Pa.1994), the district court permitted limited discovery concerning defendant's claim of racial disparity, numerous courts subsequently considering the issue have denied such defense requests.[20] *See, e.g., DesAnges,* 921 F.Supp. at 358; *United States v. Roman,* 931 F.Supp. 960, 967 (D.R.I.1996); *Davis,* 904 F.Supp. at 560; *Walker,* 910 F.Supp. at 859–60. Cooper's motion is denied.

## V. Conclusion

For the reasons stated, it is hereby

ORDERED that defendant's Motion to Compel Disclosure of the United States Attorney's Initial Recommendation to the Attorney General Regarding Decision to Seek the Death Penalty is denied; and it is

FURTHER ORDERED that Defendant's Motion to Strike Notice of Intent to Seek the Death Penalty for a Violation of 18 U.S.C. § 3593 and for Discovery and Issuance of Subpoenas is denied; and it is

FURTHER ORDERED that Defendant's Motion to Strike Notice of Intent to Seek the Death Penalty as Violative of the Fifth and Eighth Amendments and for Discovery and Issuance of Subpoenas is denied; and it is

FURTHER ORDERED that defendant's Motion to Preclude the Death Penalty; to Dismiss the Government's Notice of Intent to Seek the Death Penalty and to Strike Aggravating Factors is denied in part; and it is

FURTHER ORDERED that oral argument on the defendant's Motion for an Evidentiary Hearing on the Sufficiency of the Statutory and Nonstatutory Aggravating Circumstances Alleged by the Government, defendant's Motion for Discovery and Inspection of Information to be Presented as Aggravating Evidence at Sentence, defendant's Motion in Limine Pertaining to Unadjudicated Criminal Conduct, defendant's Third Motion for a Continuance, government's notice regarding 404(b) evidence and the government's notice of additional uncharged crimes, is

---

**19.** In his reply memorandum, Cooper relies on two cases to prove his point that black defendants who kill white victims are prosecuted in federal court for capital crimes while black defendants who kill black victims are not. He contrasts a carjacking case where a black defendant was prosecuted in federal court for killing a white victim with a robbery and quadruple homicide where a black defendant was prosecuted in Superior Court for killing four black victims in a local Mc-Donalds. However, the Court fails to see how this comparison supports Mr. Cooper's position. Aside from the issue of whether federal jurisdiction was appropriate, Cooper does not indicate in either of those cases whether the Attorney General sought the death penalty.

**20.** Cooper's reliance on *United States v. Jones,* 159 F.3d 969 (6th Cir.1998) is misplaced. In *Jones,* a non-capital case, the defendant had demonstrated a *prima facie* case for discriminatory intent.

scheduled for April 18, 2000 at 10:30 a.m.; and it is

FURTHER ORDERED that the government shall amend its notice of intent on or before April 19, 2000 to include more specific information concerning the extent and scope of the injuries and loss suffered by each victim, his or her family members and other relevant individuals, and as to each victim's "personal characteristics" that the government intends to prove under the aggravating factor of victim impact evidence; and it is

FURTHER ORDERED that the government shall be limited during the sentencing phase to introducing evidence of the aggravating factor of future dangerousness as it pertains only to any future threat Cooper may present if he is incarcerated for the remainder of his life without the possibility of release; and it is

FURTHER ORDERED that the government will not be permitted to introduce any evidence at the sentencing hearing in support of the lack of remorse aggravating factor concerning Cooper's alleged "unwillingness to acknowledge in his post-arrest statements that he is blameworthy for the crimes to which he admitted;" and it is

FURTHER ORDERED that any crimes listed as evidence of the aggravating factors of "other criminal activity" and "obstruction of justice" must be proved beyond a reasonable doubt.

IT IS SO ORDERED.