RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0112P (6th Cir.)
File Name: 04a0112p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ROBERT HENRY KETCHINGS
JR.,

    *Petitioner-Appellee,*

    *v.*

ANDREW JACKSON, Warden,
    *Respondent-Appellant.*

No. 03-1054

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-73141—Nancy G. Edmunds, District Judge.

Argued: March 17, 2004

Decided and Filed: April 19, 2004

Before: KRUPANSKY and GILMAN, Circuit Judges;
RUSSELL, District Judge.*

———————————

    * The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

———————————

## COUNSEL

**ARGUED:** Debra M. Gagliardi, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Phillip D. Comorski, Detroit, Michigan, for Appellee. **ON BRIEF:** Debra M. Gagliardi, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Gerald Lorence, Detroit, Michigan, for Appellee.

———————————

## OPINION

———————————

    RONALD LEE GILMAN, Circuit Judge. Robert Henry Ketchings Jr. was tried by a jury in a Michigan state court and convicted of second-degree murder, assault with intent to inflict great bodily harm less than murder, intentional discharge of a firearm at a dwelling, and the use of a firearm in a felony. The charges arose from Ketchings's involvement in a drive-by shooting in Detroit. After exhausting his state-court remedies, Ketchings petitioned the district court for a writ of habeas corpus. He argued, among other things, that the length of his sentence was unlawfully extended because of his refusal to admit that he was guilty of the offenses for which he was convicted. Ketchings contended that his sentence was therefore imposed in violation of his right against self-incrimination, a right enshrined in the Fifth Amendment to the United States Constitution.

    The district court concluded that the state court had unreasonably applied the relevant holdings of the United States Supreme Court regarding the Fifth Amendment. It therefore granted a conditional writ of habeas corpus, to become effective unless Ketchings is properly resentenced by another state trial judge. Michigan now appeals. For the

reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

A summation of the material facts is provided by the Michigan Court of Appeals:

At trial, the evidence established that defendant's friend had been robbed the night before the drive-by shooting in question. The next day, defendant, along with three other persons, sought revenge for the robbery. They set out in a car in search of "Rick," the alleged robber. Defendant was armed with a .380 automatic and the other persons in the vehicle were likewise armed with an AK-47 and a 9 millimeter semi-automatic pistol. They stopped in front of a house looking for Rick, and unable to find him, emptied a barrage of gunfire at the house, outside of which children were playing. Although testimony at trial indicated that defendant's gun jammed, witnesses testified that defendant raised himself out of the driver's side window of the car as he fired at the house. Spent shell casings were later found at the scene belonging to both defendant's .380 automatic and the codefendant's 9 millimeter weapon. A nine-year-old girl who was playing outside of the house was shot and killed as a result of the gunfire.

*People v. Ketchings*, 1999 WL 33437836, at * 3 (Mich. App., Aug. 20, 1999) (per curiam) (unpublished). The drive-by shooting took place on October 29, 1994. Ketchings was 19 years old at the time. The forensic evidence established that the victim was killed by a 9 millimeter bullet, which did not come from the gun used by Ketchings.

On April 30, 1997, Ketchings was convicted on a number of charges arising out of his involvement in the drive-by shooting. He was sentenced to concurrent terms of imprisonment of 40 to 80 years for second-degree murder, 5

to 10 years for assault, and 2 to 4 years for the discharge of a firearm, and to a consecutive 2-year term for using a firearm to commit a felony. The sentence imposed on the second-degree murder count was nearly twice the maximum recommended by the Michigan Sentencing Guidelines, which establishes a relevant range of 10 to 25 years' imprisonment.

In his appeal to the Michigan Court of Appeals, the last court in Michigan to address the merits of his case, Ketchings presented the following six claims:

1.   that the trial court abused its discretion in admitting other-acts evidence;

2.   that the trial court erred in failing to instruct the jury on the cognate lesser included offenses of voluntary and involuntary manslaughter and careless, reckless, and negligent use of a firearm with death resulting;

3.   that the trial court abused its discretion when it denied Ketchings's motion for a mistrial;

4.   that Ketchings was denied his right to a speedy trial;

5.   that the trial court improperly took Ketchings's failure to admit guilt into account at sentencing;

6.   that his sentence of 40 to 80 years for second-degree murder violates the principle of proportionality.

The Michigan Court of Appeals rejected all six claims. (Although the appellate court found that the trial court had erred when it admitted into evidence certain other bad acts, this error was determined to be harmless.)

Ketchings sought habeas relief in the district court after exhausting his state-court remedies. In a 51-page opinion, the district court denied habeas relief with respect to all but the fifth of Ketchings's claims: that the trial court improperly took Ketchings's failure to admit guilt into account at

sentencing in violation of his Fifth Amendment rights. The district court concluded that the Michigan Court of Appeals's application of United States Supreme Court precedent in evaluating Ketchings's fifth claim was objectively unreasonable. Ketchings's petition for a writ of habeas corpus was therefore conditionally granted, subject to an appropriate resentencing by a state trial judge other than the one who originally imposed the sentence. The state appeals.

## II. ANALYSIS

### A. Standard of review

Ketchings filed his petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, principally codified at 28 U.S.C. § 2254(d). Habeas relief may be granted only if the state court's decision either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court explained these concepts in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

State-court findings of fact must be accepted unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). We review the district court's legal conclusions de novo. *Hudson v. Jones*, 315 F.3d 212, 215 (6th Cir. 2003).

### B. The state court's decision involved an unreasonable application of Supreme Court Precedent

The Michigan Court of Appeals's entire discussion of Ketchings's Fifth Amendment claim is contained in the following paragraph:

Defendant's next claim of error on appeal is that the trial court improperly took defendant's failure to admit guilt into account at sentencing. We disagree. A sentencing court cannot, in whole or in part, base its sentence on a defendant's refusal to admit guilt. *People v. Yennior*, 399 Mich. 892; 282 NW2d 920 (1977). See also *People v. Adams*, 430 Mich. 679, 687, n 6; 425 NW2d 437 (1988). However, evidence of a lack of remorse may be considered in determining an individual's potential for rehabilitation. *People v. Wesley*, 428 Mich. 708, 711; 411 NW2d 159 (1987) (opinion of Archer, J.). As previously explained by this Court in *People v. Calabro*, 166 Mich.App 389, 396; 419 NW2d 791 (1988), "[A] defendant's lack of remorse may be considered by a court in imposing sentence. It is undeniable that when a defendant is remorseful, it is urged in mitigation by him or on his behalf, and it is healthful to ventilate the process from both perspectives rather than to sanction the use in amelioration while condemning it in aggravation." See also *People v. Houston*, 448 Mich. 312, 323; 532 NW2d 508 (1995). In this case, it is clear from our review of the full comments made by the sentencing judge that the court was merely addressing the factor of remorsefulness in the context of defendant's rehabilitative potential and avoidance of responsibility for his actions. There is no indication in the record that defendant's sentence was improperly

influenced by his failure to admit guilt or that the court was attempting to punish defendant for exercising his constitutional right to maintain his innocence. *Wesley, supra; People v. Stewart (On Remand),* 219 Mich.App 38, 44; 555 NW2d 715 (1996); *People v. Drayton,* 168 Mich.App 174, 178; 423 NW2d 606 (1988). We therefore find no error.

*People v. Ketchings*, 1999 WL 33437836, at * 7 (Mich. App., Aug. 20, 1999).

The Supreme Court has held that a defendant's Fifth Amendment right against self-incrimination "is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence.'" *Estelle v. Smith*, 451 U.S. 454, 468 (1981) (quoting *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)). This guarantee extends to the sentencing phase of the trial. *Mitchell v. United States*, 526 U.S. 314, 328-29 (1999) ("In accordance with the text of the Fifth Amendment, we must accord the privilege the same protection in the sentencing phase of 'any criminal case' as that which is due in the trial phase of the same case.").

In its brief, the state "does not dispute . . . that a petitioner retains the privilege against compelled self-incrimination through the sentencing phase of criminal proceedings." The state instead argues that the "trial court never attempted to get Ketchings to admit his guilt." Indeed, the Michigan Court of Appeals found "no indication in the record that defendant's sentence was improperly influenced by his failure to admit guilt or that the court was attempting to punish defendant for exercising his constitutional right to maintain his innocence." *Ketchings*, 1999 WL, at * 7.

A state court's findings of fact are binding in a federal habeas proceeding unless they are rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The record in this case provides such clear and convincing evidence. An

objective review of the transcript makes clear that the sentencing judge was not, as the Michigan Court of Appeals found, "merely addressing the factor of remorsefulness in the context of defendant's rehabilitative potential . . . ." *Ketchings*, 1999 WL, at * 7. To the contrary, the relevant portion of the sentencing-hearing transcript reads as follows:

THE COURT: The first thing I have to say is that you indicate to the Court that you're not guilty. And as your lawyer will tell you and I'll tell you one of the things the Judge considers in sentencing, in determining what the sentence should be is whether a person can be rehabilitated. But if you don't think you did anything wrong to start with and you don't accept what a jury says –

DEFENDANT KETCHINGS: But –

THE COURT: I'm just giving you my thinking now. Can I talk? I didn't interrupt you.

DEFENDANT KETCHINGS: I understand.

THE COURT: How can you be rehabilitated? How can you ask me to put you back in the community? How do I know you're not going to go back out and do something else like this and say, hey, judge, I didn't do it. I wasn't part of it.

We have and I don't know if you're ever heard me say this, but the jury system, you, know, sometimes I like it and sometimes I don't. But we're one of the very few countries in the world that has a jury, a judge of their peers. They're people like you. They judge you. And I'm sort of upset that you don't acknowledge that you did something wrong at this point.

. . . .

You see, to me, young people like you the key to rehabilitating is say, hey, I did something wrong. I'm sorry, man. I was in the car, it went over and shot an innocent child along with other people.

. . . .

All right. It's an awesome power of a judge to sentence somebody. . . . And it's a heavy responsibility and it's not what I particularly like, but it has to be done and it has to be done to punish and protect society, to rehabilitate you which is why I said the statement I did in the beginning. One of the issues we discussed here is can you be rehabilitated? And you can't be rehabilitated if you say you didn't do anything. You were here for this trial.

As the district court found, "the [sentencing] judge referred negatively directly and indirectly to [Ketchings's] continued assertion of his belief in his innocence and implied that [Ketchings] would be sentenced more leniently if he accepted the jury's verdict, that is, if he gave up his Fifth Amendment privilege to . . . refuse to admit guilt." Further contradicting the Michigan Court of Appeals's characterization that the sentencing judge was concerned only with Ketchings's lack of remorse and not with his unwillingness to admit guilt is the fact that Ketchings made a lengthy statement expressing his remorse immediately prior to the sentencing judge's comments quoted above. The relevant portion of the sentencing-hearing transcript reads as follows:

THE COURT: Okay. We've heard from everybody except you, Mr. Ketchings. Is there anything you want to tell me before the Court imposes sentence?

DEFENDANT KETCHINGS: Yes. I do have remorse for the family. I do like to apologize for the things that had happened and I am truly sorry. But I still feel that I'm not guilty of this crime that I've been charged

with. . . . And the prosecutor, she don't know me. She really don't. She can't even see what type of character I am in the world. It's just a bad situation that did happen. I didn't, you know --

THE COURT: Don't use that expression.

DEFENDANT KETCHINGS: I'm sorry.

Everybody saying I'm just this awful person that I'm really not. And I'm quite sure if she knew me in the world, she would be part of the persons who said I was always a true friend to her and to the victim's family. And I feel that giving me 20, 40 years of incarceration that's not going to bring the family members back or to pay back with my heart. And I can't feel how the family members feel for losing their child, but I can sympathize because I would hate for that to happen to my son. And I can only imagine how they feel. I know that she's truly upset, you know.

When this crime happened, my son was just born three days prior to this case. And I was very truly upset, you know, to find out what had happened. And I just looked at my son, and, you know, tears came from my eyes. And I do, really do feel in my heart that I'm truly sorry for the family members at what happened. And, you know, I do have a strong family background even though I made some wrong decisions in my life, you know. And my parents always taught me to be respectful to others, you.

But, you know, I just can't say nothing more. I'm truly sorry.

The fact that the sentencing judge criticized Ketchings for his failure to admit guilt even after he made the above-quoted remarks clearly contradicts the Michigan Court of Appeals's finding that the sentencing judge concerned himself only with

remorsefulness and not with the admission of guilt. In sum, whether evaluated as "an unreasonable application of [] clearly established Federal law," 28 U.S.C. § 2254(d)(1), or as "an unreasonable determination of the facts in light of the evidence," 28 U.S.C. § 2254(d)(2), the Michigan Court of Appeal's opinion does not withstand constitutional scrutiny.

The state, as a final point, raises the possibility that on remand a sentence of 40 to 80 years for second-degree murder might again be imposed based on other factors. That outcome, although possible, is far from certain in light of the Michigan Sentencing Guidelines. In addition, such a possibility does not affect the appropriateness of resentencing before another judge as the remedy for the Fifth Amendment violation that occurred in this case.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.