In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-4031

JEFFREY D. BURR,

*Petitioner-Appellant,*

*v.*

WILLIAM J. POLLARD,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 C 992—**Aaron E. Goodstein**, *Magistrate Judge.*

ARGUED SEPTEMBER 11, 2008—DECIDED OCTOBER 15, 2008

Before EASTERBROOK, *Chief Judge*, and POSNER and EVANS,
*Circuit Judges*.

EVANS, *Circuit Judge.* On a March day in 2000, loggers
working in rural Pepin County, Wisconsin, found a dead,
nearly naked body lying in the snow. Hypothermia was
evident, but Mother Nature was not the cause of death. As
a subsequent investigation discovered, the body was that
of Ronald Ross, a man who several other men assaulted at

a house party two days earlier in Red Wing, Minnesota. The body was left for dead in Wisconsin that night. Jeffrey Burr, 15 years old at the time, was the chief assailant. He attacked Ross at the party and suggested slitting his throat as he and three confederates drove the unconscious Ross to Wisconsin. When Ross came to during the drive, Burr beat him with a machete. After Burr and his companions unloaded Ross from the SUV they were using, two of the men went back to the car, but Burr and one other stayed with Ross, kicking him several times. Upon returning to the SUV, Burr said they had "killed him."

A Wisconsin state court jury convicted Burr of first-degree murder.[1] Under Wisconsin law, a defendant convicted of first-degree murder must serve a life sentence. Wis. Stat. §§ 940.01(1), 939.50(3)(a). The judge, however, can influence the actual time of confinement by setting an eligibility date for "extended supervision." *See* Wis. Stat. § 973.014(1g)(a). When an inmate is released on extended supervision, he still serves his sentence, but in a different manner—outside the prison walls. *See State v. Larson*, 268 Wis. 2d 162, 166, 672 N.W.2d 322, 324 (Wis. Ct. App. 2003) ("[T]he term extended supervision . . . means supervision of an individual not incarcerated."). Extended supervision, therefore, is synonymous with "supervised release," a term used by federal courts. *See, e.g., United States v. Hatten-Lubick*, 525 F.3d 575, 581-82 (7th Cir. 2008).

---

[1] He was also convicted of aggravated battery and false imprisonment.

An eligibility date for extended supervision became an issue at Burr's sentencing. The presentence report stated Burr bullied a boy named Andy Rush in school.[2] Burr disputed that allegation, and his attorney asked the court to strike the information or hold an evidentiary hearing to determine its validity. The judge went with option one, stating that he would not consider the allegation for sentencing purposes. Yet, when it came time to announce the sentence, that ruling apparently slipped his mind. The judge remarked, "All through school and his contact with other kids, [Burr has] been a bully." After recounting the events concerning the beating and murder of Ross, the judge imposed the mandatory life term and ordered that Burr would be eligible for "extended supervision" after 60 years, in 2061.

The judge subsequently refused to modify the sentence, stating that he premised the extended supervision date on the fact that it was a "brutal murder," and 60 years would ensure that Burr "would be old enough when he got out that he couldn't hurt anyone else." The judge said he did not consider the bullying issue "as a factor at sentencing."

Burr also contended in his motion to modify that the judge punished him for exercising his right to remain silent. Burr did not take the stand at trial, and he declined to say any thing during the sentencing hearing. The judge at sentencing said he was disturbed that Burr didn't show

---

[2]  The details of those encounters are not in the record before us.

"one ounce of remorse or repentance" and had an "absolutely flat affect" in his court appearances. As the judge saw it, Burr failed to exhibit "tenderness towards anybody on the stand."

Later, the judge handed out lighter sentences (at least in terms of extended supervision) to Noah and Arlo White, two brothers who were also convicted of Ross's murder. There, the judge contrasted their actions in court with those of Burr. The White brothers, who pleaded guilty, would be eligible for earlier extended supervision because they acknowledged their crimes. Burr, on the other hand, "took no responsibility. *He did not say one word in this court.* He never acknowledged any guilt whatsoever."

Burr sought relief in the Wisconsin Court of Appeals. *State v. Burr*, 266 Wis. 2d 694, 2003 WL 21448555 (Wis. Ct. App. June 24, 2003). The Wisconsin Court of Appeals agreed that the sentencing judge erred with respect to the bullying issue, but Burr's victory was superficial. The court concluded that the error was harmless at best because the judge's comments at sentencing "focus[ed] primarily on the crime's brutal nature and Burr's primary role, lack of remorse, antisocial tendencies, aggressive and violent nature, history of discipline problems, and substance abuse." Burr had even less success with a Fifth Amendment argument. The appellate court decided that the sentencing judge properly considered Burr's lack of remorse and gave due weight to that factor. The Wisconsin Supreme Court denied a request for review.

With his state court remedies exhausted, Burr filed a habeas corpus petition with the federal district court.[3] The district court dismissed Burr's petition, concluding that the "bullying" reference was not necessarily based on the same information stricken by the judge—the stricken information referred to a specific individual; the judge at sentencing said Burr bullied "kids"—and, in any event, the appellate court's harmless error analysis was consistent with Supreme Court precedent. The court further rejected the Fifth Amendment claim, explaining that the finding of no remorse rested upon circumstances other than mere silence. Burr now appeals the dismissal of his petition.

We review the district court's factual findings for clear error and its legal conclusions *de novo*. *Rizzo v. Smith*, 528 F.3d 501, 505 (7th Cir. 2008). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner is entitled to habeas relief when a decision of the state court is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362 (2000). A decision is "contrary to" Supreme Court precedent when it relies on a rule that conflicts with that precedent or reaches a different result in a similar case. *Williams*, 529 U.S. at 412-413. A state court unreasonably applies clearly established law if it "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the

---

[3] Magistrate Judge Aaron E. Goodstein presided with the consent of the parties.

prisoner's case." *Williams*, 529 U.S. at 413. In either event, error alone is not sufficient; a state court's decision must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003).

Burr renews his claim here that his due process rights were violated when the judge considered the "bullying" allegation after striking it from the record and that his Fifth Amendment rights were infringed when the judge enhanced the confinement component of his sentence because he remained silent.

Taking the issues in turn, Burr contends the state court of appeals applied the wrong standard of review in resolving the "bullying" claim. The appellate court said the sentencing judge's error was harmless because there was "no reasonable *probability*"—as opposed to "possibility"—that it resulted in a longer period of incarceration. As Burr points out, the Supreme Court has held that courts conducting harmless error review on direct appeal should determine whether the error was "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). Nevertheless, we agree with the district court that the state appellate court meant to, and more importantly did, apply the *Chapman* standard. Second, and more important, *Chapman* is neither here nor there. Just two terms ago, the Supreme Court held that under AEDPA a federal habeas court is to apply the more forgiving "substantial and injurious effect" standard from *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993), when it identifies a constitutional error, regardless of whether the state court recognized the error and reviewed it for harmlessness

beyond a reasonable doubt under *Chapman. Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007). So the standard varies depending on whether the challenge is made on direct appeal or collateral review, and the state court made no mistake when it applied *Chapman*. Regardless, the question for us is whether the trial judge's consideration of a stricken statement in the PSR had a "substantial and injurious effect" on Burr's sentence. It did not. The judge's reference to Burr's history as a bully was little more than an afterthought; the judge considered a number of factors in reaching his decision, but the driving force was the brutal nature of the beating and subsequent murder, not Burr's run-ins with a particular classmate in school. Burr's attorney told us at oral argument that the bullying factor "*had* to have a substantial effect" on the eligibility date. But the record doesn't compel that conclusion; instead it supports the state appellate court's finding of harmless error. The district court properly denied habeas relief on this ground.

So, too, did the district court reach the right result with respect to the Fifth Amendment claim. The Fifth Amendment protects an accused's right to remain silent at trial and sentencing. *Mitchell v. United States*, 526 U.S. 314, 326-27 (1999). That right, of course, would mean little if a judge could punish a defendant for invoking it. *United States v. Turner*, 864 F.2d 1394, 1405 (7th Cir. 1989). Nevertheless, silence can be consistent not only with exercising one's constitutional right, but also with a lack of remorse. The latter is properly considered at sentencing because it speaks to traditional penological interests such as rehabilitation (an indifferent criminal isn't ready to reform) and

deterrence (a remorseful criminal is less likely to return to his old ways). *See Bergmann v. McCaughtry*, 65 F.3d 1372, 1379 (7th Cir. 1995). The line between the legitimate and the illegitimate, however, is a fine one. As we have recognized, "sometimes it is difficult to distinguish between punishing a defendant for remaining silent and properly considering a defendant's failure to show remorse in setting a sentence." *Bergmann*, 65 F.3d at 1379 (citing *United States v. Johnson*, 903 F.2d 1084, 1090 (7th Cir. 1990)). But this is not one of those difficult cases. Viewing the record in its entirety, it is plain that the judge was bothered by Burr's lack of sympathy—which can be expressed in a variety of nonverbal ways—rather than his silence. The judge's remark to Burr's codefendants that Burr failed "to say one word in this court" only has force when viewed out of context. Considering the record as a whole, it was simply another way of noting Burr's lack of remorse. Perhaps the judge could have chosen better words, but the Constitution is not violated by a mere slip of the tongue. Accordingly, the state appellate court's decision rejecting this argument was neither contrary to nor an unreasonable application of federal law.

The district court's order denying Burr's petition for a writ of habeas corpus is AFFIRMED.