# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3912

_____

United States of America,           *
                                    *
          Appellee,                 *
                                    *  Appeal from the United States
     v.                             *  District Court for the
                                    *  Western District of Missouri.
Jeron B. Seward,                    *
                                    *
          Appellant.                *

_____

Submitted: September 22, 2009
Filed: October 15, 2009

_____

Before WOLLMAN, HANSEN, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

     In September 2008, Jeron B. Seward pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  At his plea colloquy, Seward gave false testimony regarding his use of an alias when arrested, which caused the district court[1] to impose an obstruction of justice enhancement under the Sentencing Guidelines.  Seward appeals, and we affirm.

_____

     [1]The Honorable D. Gregory Kays, United States District Judge for the Western District of Missouri.

I.

On August 10, 2008, Officer Michael Jones of the Kansas City, Missouri, Police Department observed a vehicle stopped in the middle of the street in front of 9805 Hardesty Avenue. As Officer Jones drove by the car he recognized the passenger, Jeron Seward. Knowing that Seward had outstanding arrest warrants, Officer Jones approached the car and asked both men their names, even though he already knew Seward's identity. The driver truthfully gave his name, but Seward told the officer his name was "James Wilson."

Officer Jones took Seward into custody based on the outstanding arrest warrants. He then began a search of the car, and asked Seward and the driver if there was anything in the car that he needed to know about. The men indicated there was not, but Officer Jones discovered a loaded Sig Sauer 9mm semi-automatic handgun under the passenger seat where Seward had been sitting. In a subsequent interview, Seward denied that the gun belonged to him, but admitted that he knew about the gun and had handled it.

On August 20, 2008, Seward was charged in a one-count indictment with being a felon[2] in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The indictment specifically included the alias "James Wilson." On September 5, Seward pled guilty to the indictment, without a plea agreement with the government. During the plea colloquy, Seward admitted that he had been caught with a firearm that he was not supposed to have and that he had a prior felony conviction. The court then inquired into why Seward had the gun, to which Seward's attorney objected. After discussion with the parties about the extent of the court's questions, the court indicated that it expected candor from Seward, but that the court would accept

_____

[2]Seward had been previously convicted of attempted robbery and conspiracy to commit robbery in Wyandotte County, Kansas.

Seward's plea "as long as we establish the factual basis of the elements."[3] (Change of Plea Hr'g Tr. 24, Sept. 5, 2008.) Seward volunteered that he had the gun for his own protection.

The court then asked Seward about the circumstances of his arrest, and about why the indictment charged him under the alias of "James Wilson." Seward's attorney did not object to this line of questioning. Seward stated that Wilson was his brother, and specifically denied claiming to be Wilson when he was arrested. When questioned about Officer Jones's report indicating that Seward gave his name as "James Wilson," Seward again denied using the Wilson alias and alleged that the officer lied in his report. Seward then admitted that the gun he possessed traveled in interstate commerce. The court accepted Seward's guilty plea and ordered a Presentence Investigation Report (PSR).

Seward's PSR recommended a base offense level of 20, and a 2-level enhancement for obstruction of justice, due to Seward's false denial of his use of the Wilson alias.[4] At the sentencing hearing, Officer Jones testified that Seward did initially give his name as "James Wilson" when arrested. Based on that testimony and Seward's contrary statements at his plea colloquy, the court found that Seward obstructed justice by lying under oath and adopted the PSR's recommended two-level increase under §3C1.1. See United States Sentencing Commission, Guidelines Manual, §3C1.1 (Nov. 2008). The court also found that Seward's false testimony was

_____

[3]To establish a § 922(g)(1) violation, the government must prove that (1) the defendant had previously been convicted of a crime punishable by imprisonment over one year, (2) the defendant knowingly possessed a firearm, and (3) the firearm was in or affected interstate commerce. United States v. Collier, 527 F.3d 695, 701 (8th Cir. 2008). Motive for possessing the firearm is not an element of the offense.

[4]The PSR recommended other sentence enhancements that the government abandoned at the sentencing hearing due to lack of evidence. Those recommendations are not on appeal here.

inconsistent with acceptance of responsibility for his offense, and refused to reduce Seward's offense level under §3E1.1. This left Seward with an offense level of 22. With a Category II criminal history, Seward's advisory Guidelines range was 46 to 57 months. After considering the factors set forth in 18 U.S.C. § 3553(a), the court sentenced Seward to 55 months imprisonment.

Seward now appeals, arguing that the court's questioning of the circumstances surrounding his offense violated the prohibition against judicial participation in plea negotiations pursuant to Federal Rule of Criminal Procedure 11.

II.

Rule 11 lays out the requirements for pleas of guilty and nolo contendere, and generally prohibits a court from participating in plea negotiations between a criminal defendant and the government. See Fed. R. Crim. P. 11(c)(1) ("The court must not participate in [plea agreement] discussions."). Seward claims that the court's questioning amounted to interference in his plea, and this interference caused Seward's sentence to be enhanced. Because Seward did not object to the court's questions regarding the alias at the plea colloquy, the parties agree that we review for plain error. United States v. Williams, 557 F.3d 556, 559 (8th Cir.), cert. denied, 2009 WL 2043522 (2009).

Seward's Rule 11 argument is clearly foreclosed by the plain language of Rule 11 itself. Rule 11(c) applies to plea agreements reached between the government and a criminal defendant's attorney (or the defendant when proceeding pro se). It flatly prohibits a court from participating in those agreements, and for good reason: "the goal . . . is to prevent even the appearance that the judge is pressuring a defendant to plead guilty." 1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 180 (4th ed. 2008). However, where a guilty plea is not the product of a plea agreement, Rule 11(c) has no effect. See, e.g., United States v. Reasor, 418

F.3d 466, 478-79 (5th Cir. 2005) (noting that where there was no plea agreement in place, Rule 11's prohibition on judicial participation in plea agreements does not apply). Seward's plea was "to the court," and was not the product of any negotiations with the government. (See Change of Plea Hr'g Tr. 2-3.) As such, Rule 11(c) is inapplicable to Seward's plea.

It also appears that the district court complied with the other aspects of Rule 11 in finding that Seward's plea was knowing and voluntary, and the parties do not argue otherwise. The court questioned Seward extensively about his background, his medical history, and the factual basis for his plea. The court also informed Seward of his rights were he to go to trial, and determined that his plea was a knowing and voluntary waiver of those rights. See Fed. R. Crim. P. 11(b). With such a record, any argument based on Rule 11 is misplaced.

Seward's reliance on Mitchell v. United States, 526 U.S. 314 (1999), is similarly unpersuasive. In Mitchell, the defendant pled guilty to various drug offenses involving cocaine, but reserved her right to contest the drug quantity at sentencing. Id. at 317-18. At sentencing, the defendant did not take the stand, and did not introduce any evidence of drug quantity, but argued that the government had only proved that she sold two ounces of cocaine, not the five kilograms with which she was charged. Id. at 319. The district court ruled that as a consequence of her guilty plea, the defendant "had no right to remain silent with respect to the details of her crimes." Id. At sentencing, the court found that the evidence proved she had sold at least five kilograms of cocaine, based in part on the fact that she did not testify to the contrary. Id. The Supreme Court reversed, holding that the defendant retained her Fifth Amendment privilege against self-incrimination even after pleading guilty, and that a sentencing court may not draw adverse inferences from a pleading defendant's silence. Id. at 325, 329-30.

Here, however, it was not Seward's silence or refusal to testify that resulted in his enhanced sentence. Rather, it was his false denial, made under oath, regarding his use of an alias when arrested. Silence on that topic, or a truthful answer, would not have exposed Seward to an enhanced sentence.[5] Although Seward claims that he feared his silence on the issue of the alias might have been used to enhance his sentence, that argument is belied by the language of <u>Mitchell</u>, which held that a pleading defendant's silence cannot be used against him. Thus, <u>Mitchell</u> does not support Seward's argument that the court clearly erred in questioning and sentencing Seward as it did.

## III.

For the foregoing reasons, we affirm Seward's sentence.

_____

---

[5]Indeed, the commentary accompanying §3C1.1 specifically lists "providing a false name or identification document at arrest" as conduct that ordinarily should not subject someone to an obstruction of justice enhancement. USSG §3C1.1, comment. (n.5).