NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1180n.06

**No. 11-2256**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

*Nov 14, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BRIAN MILLER, | ) | |
| Petitioner-Appellee, | ) ) ) | |
| v. | ) ) | On Appeal from the United States District Court for the Eastern |
| BLAINE LAFLER, WARDEN, | ) | District of Michigan |
| Respondent-Appellant. | ) ) | |

Before:      BOGGS and CLAY, Circuit Judges; and STAFFORD, District Judge.[*]

BOGGS, Circuit Judge.  In May 2008, a Michigan jury convicted Brian Miller of first-degree home invasion and second-degree criminal sexual conduct.  The state trial judge held a sentencing hearing and imposed consecutive terms of 50 to 240 months and 24 to 180 months of imprisonment for the respective charges.  Miller asserted his innocence throughout the hearing, but the judge urged Miller to admit responsibility for the sake of his family and that of the victim.  The judge criticized Miller when he failed to do so.  Miller moved for resentencing, arguing among other things that the trial court based its sentence in part on Miller's assertion of innocence.  The trial judge denied the motion, again commenting on Miller's failure to accept responsibility.

_____

[*] The Honorable William H. Stafford of the United States District Court for the Northern District of Florida, sitting by designation.

Miller appealed to the Michigan Court of Appeals, which concluded that the trial court did not base its sentencing decision on Miller's refusal to admit guilt. The Michigan Supreme Court denied Miller's application for review. After his direct appeals, Miller filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. The district court granted Miller's petition in part, finding that the trial court violated Miller's Fifth Amendment rights by basing its decision to make Miller's sentences consecutive on an adverse inference drawn from Miller's repeated assertions of innocence.

The district court granted relief under 28 U.S.C. § 2254(d)(1) and (d)(2), holding that the Michigan Court of Appeals unreasonably applied clearly established federal law as determined by the Supreme Court and unreasonably determined the facts in light of the evidence. However, we find no law, clearly established or unreasonably applied, that would support Miller's habeas claim. Nor do we find a factual issue that would warrant consideration under § 2254(d)(2). For the reasons that follow, we reverse the district court and deny Miller's petition for habeas corpus.

I

The facts of this case arise from an August 2007 event involving Miller and a female who was a neighbor to Miller and a friend of Miller's sister. The victim awoke early in the morning to find Miller, donning a mask, in her bedroom doorway. Miller rushed the victim, tore off her shirt, fondled her, and attempted to rape her. He stopped after the victim identified Miller by his voice. The two talked for some time afterward. Miller admitted to breaking into the victim's home through a laundry-room window and to being under the influence of alcohol and drugs. The victim ordered Miller to leave after he made another unwanted sexual advance. Before leaving, Miller threateningly

ordered the victim not to report the incident. Notwithstanding the threat, the victim phoned the police, who immediately arrested Miller. He pled not guilty, but was convicted after a four-day trial.

At sentencing, the trial judge heard from both Miller and his attorney. Speaking first, Miller's attorney portrayed him as a young man with a rough background who posed no threat to the community and who was prepared to accept the consequences of his actions. After taking statements from the victim and the prosecutor, the trial judge permitted Miller to allocute. It was at this point that Miller began to assert his innocence:

> I'm -- I'm not a . . . whatever she is saying. This never happened. . . . And you know there's just, I don't know what's going on. You know everybody's blaming it on me. But you know, I'm the one with the job, I had a job. I got my diploma. I'm special ed. You know, . . . I don't know how to say it, you know, to you right - - right now, because it's just going through my head so fast. I don't know what to tell you. And it's just -- just so hard on me.

Later, he appears to indicate that the victim picked on him as a child:

> You, know [sic] I've been teased as a kid by -- by -- by the defendant, you know, a lot. You know when I was growing up, that's -- that's hard, you know, going through school. Oh, you're in special ed, ha -- ha -- ha, you know that, you know. You're a retard, you know? How - - how do you feel, you know, about all that.

Responding to Miller's allocution, the trial court stated that, based upon what it had seen during the trial, it believed Miller was a danger to the community. After expressing its views on the weight of the evidence, the court noted its concern with the grief that Miller's denial of responsibility caused Miller's family:

> Now your family, I don't know what they think. . . . Ah, you know, obviously they don't think you did it. They believe you. Ah, you know they believe this young lady is just making it up because she thinks, you know, she doesn't like you because you're special ed. . . . But quite frankly, I don't know that they do you any favor by accepting that. I think they would probably be better off if they told you point blank

they think you did this, and you shouldn't be conducting yourself in this way, and they want to get you help. That's what I think they should be saying to you based on what I saw here. 'Cause I -- I have no doubt in my mind you did it, ah, there's no doubt about it, you did this.

The trial judge went on to admonish Miller personally, stating,

Your family is going to suffer the rest of their lives because they're going to think that you went to prison when you shouldn't have. And they're going to blame this young lady for the fact that you went to prison. Um, and you're never going to get any help. And you're going to live to do it again. And then the next time you'll go away for the rest of your life. That's the bad part about it. And to be honest with you, if you wanted to do your family a favor, you would turn to them and you would admit [the crime] to them. You would say, look I absolutely did this. Because they need to know that you did it, so they can get you help.

The court doubted that Miller would actually admit his guilt:

But you're not going to do that. You're gonna to do [sic] like every other defendant I've sent to prison. You're gonna deny it all the way to prison. And then they're going to spend money on appellate lawyers, and all this kind of stuff for you, 'cause they think you got railroaded.

After the trial judge criticized Miller's failure to accept responsibility for a second time, Miller and the judge engaged in the following exchange:

THE COURT: Tell them what you did, so that they can go on with their lives and not think that you've been railroaded. But you're not gonna do it. So everyone continues to suffer.

MR. MILLER: Because I didn't do it.

THE COURT: I'm sorry?

MR. MILLER: Because I didn't do it.

THE COURT: That's what I expected you to say.

- 4 -

MR. MILLER: You -- you got your own story, she's got her own story, I got my own story.

The trial court proceeded to impose consecutive sentences at the high end of the state sentencing guidelines. In explaining its reasoning, the court stated,

I think based on the discussion that I've had here, I'm convinced that you've not learned anything. That you have no remorse for what you've done. And -- and because of that, I am going to exercise my discretion to run consecutive instead of concurrent. Because I think that, ah, I need to remove you from society as long as I possibly can. To protect the victim, number one. Ah, but also to hopefully hope [sic] that you'll mature, ah, to an extent that when you do get out that you don't repeat this kind of behavior again.

Miller moved for resentencing on a number of grounds, including that the trial court based its sentence on Miller's continued assertion of innocence. The trial court rejected this argument. It noted that any negative references to Miller's failure to accept responsibility were merely commentary on how "unfair [it was] for him to allow this relationship that existed between his sister and [the victim] to sour when he knows that [he committed the crime] and all the evidence shows that he did it," but that the court "would not have taken that into consideration in [Miller's] sentencing."

The Michigan Court of Appeals affirmed Miller's sentence. *People v. Miller*, No. 286771, 2010 WL 446050, at *3 (Mich. Ct. App. Feb. 9, 2010). The state appellate court, citing its own case law, recognized that improper consideration of a defendant's refusal to admit guilt violates the Fifth Amendment. *Ibid.* (citing *People v. Conley*, 715 N.W.2d 377 (Mich. Ct. App. 2006) (which, in turn, cites Sixth Circuit precedent)). However, the appellate court found no such violation in Miller's case, pointing out that the trial court did not threaten to punish Miller if he failed to admit guilt and

characterizing the judge's comments above as "discuss[ion] [of] the fact that defendant's failure to be honest with his sister and family caused the breakup of a longtime friendship . . . ." *Ibid.* The Michigan Supreme Court denied Miller's application for leave to appeal in a summary order. *People v. Miller*, 783 N.W.2d 373 (Mich. 2010).

The district court below granted in part Miller's petition for a writ of habeas corpus, finding that the Michigan Court of Appeals unreasonably applied clearly established federal law and unreasonably determined the facts in upholding Miller's sentence. *Miller v. Lafler*, No. 2:10-CV-14955, 2011 WL 4062410, at *7 (E.D. Mich. Sept. 13, 2011). Relying heavily upon our opinion in *Ketchings v. Jackson*, 365 F.3d 509 (6th Cir. 2004), the court below found that the state trial court "did not merely comment upon petitioner's lack of remorse, 'but referred negatively directly and indirectly to' petitioner's 'continued assertion of his belief in his innocence.'" *Ibid.* (quoting *Ketchings*, 365 F.3d at 513). Warden Blaine Lafler appeals the district court's decision.

II

Both parties agree that the deferential standard of the Antiterrorism and Effective Death Penalty Act applies to this case. Under AEDPA, we may not grant a writ of habeas corpus on a claim that a state court has resolved on the merits unless the decision:

> (1) . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Meeting either of these standards is difficult. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already

rejected in state proceedings." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Under AEDPA, federal courts retain authority to issue a writ only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents. [This authority] goes no farther." *Ibid.* We review the district court's application of AEDPA *de novo*. *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (en banc).

A

To establish a successful claim for relief under paragraph (d)(1), a petitioner must show that the state court unreasonably applied clearly established federal law. For the purposes of AEDPA, a law is "clearly established" if it is enshrined in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). While AEDPA does not require us "to wait for some nearly identical factual pattern before a legal rule must be applied," *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (internal quotation marks omitted), the legal rule asserted must be one "squarely established" by the Supreme Court. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

Even then, the state court's ruling must involve "an unreasonable application of" clearly established federal law.[1] "Unreasonable" in this context does not mean merely incorrect, but rather means "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

---

[1]Miller does not assert that the Michigan Court of Appeals made a decision "contrary to" clearly established federal law, and we therefore limit our analysis to the "unreasonable application" standard.

jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Under this standard, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Ibid.* Rather, before we may grant the writ, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

B

Miller also asks us to review his case under § 2254(d)(2) for an unreasonable factual determination by the state court. He correctly points out that the district court cited both paragraphs (d)(1) and (d)(2) in its opinion below. However, in our *de novo* review of the district court's AEDPA discussion, we find no issue under paragraph (d)(2). The question in this case is purely a legal one: Did the Michigan Court of Appeals unreasonably apply clearly established federal law, as determined by the Supreme Court, in holding that the trial judge's comments did not violate Miller's Fifth Amendment rights? The district court seemingly had the same view, as it devoted the totality of its analysis to determining the applicable rule of law. *Miller v. Lafler*, 2011 WL 4062410, at *6–7. In only two sentences out of the entire opinion does the district court even make reference to § 2254(d)(2). *Ibid*. These passing references cannot create a (d)(2) issue in what is clearly a (d)(1) case. We therefore limit our analysis to § 2254(d)(1).

III

No. 11-2256
Miller v. Lafler

Miller argues that the state trial court violated his Fifth Amendment right against self-incrimination by punishing him for maintaining his innocence at sentencing, and that the Michigan Court of Appeals unreasonably applied clearly establish federal law in upholding his sentence. Miller points to *Estelle v. Smith*, 451 U.S. 454 (1981), and *Mitchell v. United States*, 526 U.S. 314 (1999), to substantiate his reading of the Fifth Amendment. He further asserts that this circuit has recognized such a reading of *Estelle* and *Mitchell*, citing our precedent in *Ketchings v. Jackson*, 365 F.3d 509 (6th Cir. 2004). While Miller's reading of the applicable case law is certainly a plausible synthesis, the Supreme Court has not squarely addressed the legal proposition advanced here. To the extent that he relies on clearly established federal law, Miller's proposed application is subject to fairminded disagreement.

A

It is axiomatic that the Fifth Amendment protects a defendant's right "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Estelle*, 451 U.S. at 468 (internal quotation marks omitted). The privilege applies so long as a defendant's compelled testimony could result in further incrimination, *Mitchell*, 526 U.S. at 326, and ends when such adverse consequences are removed, whether through proper immunization, *Kastigar v. United States*, 406 U.S. 441, 448 (1972), or voluntary waiver, *Mitchell*, 526 U.S. at 322–23. This principle applies with equal force during sentencing, as "a defendant may have a legitimate fear of adverse consequences from further testimony" where a sentence has not yet been imposed. *Id.* at 326.

While the Court has spoken clearly on the principle to which we must adhere, it has been less specific on how we are to put it into practice. In *Mitchell*, the Court held that a sentencing court may not make adverse inferences from a defendant's silence as to the facts of the offense. *Id.* at 330. The defendant in *Mitchell* pled guilty to a number of drug offenses, but did not admit to trafficking a specific amount of narcotics. At her sentencing hearing, the government produced witnesses to testify as to the amount of drugs involved (which in turn would determine her mandatory minimum sentence). Though her lawyer cross-examined the government's witnesses, the defendant herself did not testify. In finding credible the testimony of the government witnesses, the district court noted that it held the defendant's silence against her, concluding that her plea waived her right to remain silent. *Id.* at 319. The Supreme Court rejected the district court's legal reasoning and held that the court's adverse factual inference violated the Fifth Amendment by effectively relieving the government of its burden to prove the facts of the crime relevant to sentencing. *Id.* at 330. In so doing, the district court "enlist[ed] the defendant" into the government's case against her "at the expense of the self-incrimination privilege." *Ibid.*

The majority went on to qualify this broad proposition: "Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of [a] downward adjustment . . . is a separate question. It is not before us, and we express no view on it." *Ibid.* Sensing the confusion that this caveat would cause, Justice Scalia, writing for four dissenting justices, warned that lower courts would have to deal with "clutter swept under the rug" in addressing "determinations of acceptance of responsibility, repentance, character, and future dangerousness, . . . that is to say, . . . the bulk of what most sentencing is all about." *Id.* at 340

(Scalia, J., dissenting). The dissent questioned how lower courts would be able to police effectively the line between inferences as to the facts of the crime and inferences as to the defendant's lack of remorse, uncooperativeness, and the like. *Ibid.* Finally, the dissenters predicted "a decent period of confusion in the lower courts," *ibid.*, a prediction that, as discussed below, appears to have come true.

B

Miller asserts that the state trial court violated *Mitchell* by holding his repeated assertions of innocence against him. However, Miller's claim does not fit within the narrow holding of *Mitchell*. For one, *Mitchell* addressed negative *factual* inferences as to the circumstances and details of the crime based upon a defendant's *silence*. The adverse inference made in *Mitchell* pertained to an unproven, unadmitted fact of the crime, the truth of which would determine the applicability of a mandatory sentencing provision. Here, the Michigan trial court stated, and the appellate court agreed, that any negative inference drawn from Miller's allocution applied to his perceived level of remorsefulness and ability to rehabilitate, both of which are sentencing factors that are properly assessed for the purpose of applying a discretionary consecutive-sentence provision. Furthermore, any negative inference made would have been based on Miller's *statements*, as opposed to his mere silence. This voluntary act not only distinguishes our case from *Mitchell*, but also may have waived Miller's Fifth Amendment privilege as to the content of his statements.[2]

---

[2]Since Miller cannot clear the hurdle of AEDPA deference, we need not address this issue. It is worth noting, however, that at least one of our sister circuits has endorsed this position, *United States v. Whitten*, 610 F.3d 168, 199–200 (2d Cir. 2010), which makes sense in light of the principle of limited waiver, *see United States v. Robinson*, 485 U.S. 25, 34 (1988).

Though it is arguable that an inference such as the one allegedly made here violates the spirit of *Mitchell*, this is not enough for the purposes of AEDPA. We cannot grant habeas on a claim that does not rest on a violation of "clearly established Federal law," 28 U.S.C. § 2254(d)(1), and a rule of law is not clearly established unless the Supreme Court has "squarely established" it. *Mirzayance*, 556 U.S. at 122. Far from squarely establishing the rule pressed here, the Supreme Court "expressed no view" on "[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility." *Mitchell*, 526 U.S. at 330. This is fatal to Miller's case.

C

To the extent that Miller bases his claim on the clearly established rule of *Mitchell*, he must also show that the state court's application of this rule is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786–87. Miller has failed to do so. Far from being "well understood and comprehended," *Mitchell* has divided opinions not only within this circuit but also among our sister circuits.

1

This circuit has previously addressed *Mitchell* on three separate occasions. The first of these is *Ketchings v. Jackson*, 365 F.3d 509 (6th Cir. 2004). Miller asserts that *Ketchings* is both binding upon this panel and dispositive of his case. On his first proposition, Miller is flatly wrong. The Supreme Court has warned the lower courts recently and repeatedly "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and therefore

- 12 -

"cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (citations omitted); *see also Renico v. Lett*, 130 S. Ct. 1855, 1865–66 (2010).

Furthermore, *Ketchings*, though similar to the case before us, is ultimately inapposite. The defendant in *Ketchings* sought resentencing under the theory that the state trial judge made an adverse inference from his failure to admit guilt. Similar to our case, the state court in *Ketchings* denied the defendant's claim on appeal on the ground that any negative comments made by the trial judge merely went to the defendant's lack of remorse and rehabilitative potential. Our panel upheld the district court's grant of a writ, citing *Mitchell*. *Id.* at 512–14.

Were this the end of the matter, Miller might have a strong argument. *Ketchings*, however, is distinguishable on two key grounds. The first of these is purely factual: the defendant in *Ketchings* clearly *did* express remorse during his allocution. *Id.* at 513–14. In other words, the state court's reason for handing down a harsher sentence reeked of pretext—one could not reasonably infer a lack of remorse from the defendant's failure to admit guilt, as he expressed sympathy for the family of the victim. The same cannot be said in Miller's case.

The second distinction is of a more legal nature: *Ketchings* does not specify whether relief issued due to an unreasonable application of clearly established federal law (§ 2254(d)(1)) or an unreasonable determination of fact (§ 2254(d)(2)). *Id.* at 514. While this is a seemingly technical point, *Ketchings* should not influence our (d)(1) analysis unless it is in fact a (d)(1) ruling. Indeed, the case reads very much like a (d)(2), unreasonable-determination-of-fact analysis. The *Ketchings* panel focused heavily on examining the facts of the case, and the fate of the claim turned on the fact that, contrary to the trial court's inference, Ketchings expressed remorse for the pain to the victim's

family. *Id.* at 512–14. This suggests that the panel was concerned with the state court's determination of fact as opposed to its application of law. Consistent with this reading is the fact that the panel spent only one paragraph parsing what was (and still is) a confusing body of Fifth Amendment law. *Id.* at 512. If the panel were conducting a (d)(1) analysis, it would have certainly spent more time with the applicable case law. We therefore find *Ketchings* distinguishable and unpersuasive.

The next case in this series is *United States v. Kennedy*, 499 F.3d 547 (6th Cir. 2007), which Warden Lafler urges us to adopt. The defendant, convicted of possessing child pornography, argued that the district court violated his Fifth Amendment rights by making an adverse inference against him for his failure to undergo a statutorily mandated psychosexual evaluation. *Id.* at 549. In rejecting this argument, the panel highlighted the narrowness of *Mitchell*, stating that the defendant's case "implicate[d] Justice Scalia's 'clutter swept under the rug,' as the district court plainly considered [the defendant's] refusal to complete testing in determining his propensity for future dangerousness, rather than in determining facts of the offense." *Id.* at 552. Though *Kennedy* quite clearly sticks closer to the central holding of *Mitchell*, we need not address its substantive applicability to this case. For the purposes of AEDPA, it is sufficient to mark *Kennedy* as a waypoint in navigating the case law.

Though uncited by either party, our recent split-panel decision in *Woodall v. Simpson*, 685 F.3d 574 (6th Cir. 2012), warrants attention. The *Woodall* majority granted habeas in a state death-penalty case, finding that the trial judge's failure to give a no-adverse-inference instruction during the sentencing phase of the trial violated the defendant's Fifth Amendment rights. That this case

ultimately concerns the right to a prophylactic instruction under *Carter v. Kentucky*, 450 U.S. 288

(1981), as opposed to the scope of *Mitchell*'s no-adverse-inference rule is enough to distinguish it.

However, the majority reached its conclusion as to the necessity of a *Carter* instruction by making

an intermediate holding on the scope of *Mitchell*, that is, that the perceived breadth of the

no-adverse-inference rule warranted a prophylactic instruction in order to protect the right. *Woodall*,

685 F.3d at 578–79. This intermediate holding does not bind us, but it does further demonstrate the

lack of clarity on the scope of *Mitchell*.

2

We next address the law of our sister circuits. As noted previously, *Mitchell* has divided

courts across the country. *See United States v. Caro*, 597 F.3d 608, 629 (4th Cir. 2010) (collecting

conflicting cases on *Mitchell*'s applicability to the nonstatutory sentencing factor of remorse). Much

like our own precedent, the case law of our sister circuits breaks down into two broad groups: those

cases that expand *Mitchell*'s underlying principle to related but ultimately different legal questions,

and those cases that take *Mitchell*'s limitation at face value and restrict it to its express rule of

decision.

The Fourth Circuit in *Caro* took the first of these approaches, observing that because

"remorse implies consciousness of guilt, speaking words of remorse for conduct prevents a defendant

from later denying the conduct," and that "*Estelle* and *Mitchell* together suggest that the Fifth

Amendment may well prohibit considering a defendant's silence regarding the non-statutory

aggravating factor of lack of remorse." *Caro*, 597 F.3d at 629 n.16, 630. There, the court found that

the prosecutor improperly suggested that the jury find the defendant's failure to express remorse as

evidence of an aggravating factor warranting the imposition of the death penalty. *Id.* at 627, 630–31.

Though it is significant that the Fourth Circuit construed *Mitchell* broadly, *Caro* is set in the context

of a jury trial during the penalty phase of a death-eligible case. No other circuit has joined the Fourth

Circuit in this holding.[3] Two federal district courts have expressed similar views, *United States v.*

*Roman*, 371 F. Supp. 2d 36, 50 (D.P.R. 2005), and *United States v. Cooper*, 91 F. Supp. 2d 90,

112–13 (D.D.C. 2000), and the District of Columbia Circuit has expressed concern about the

constitutionality of adverse inferences made from a defendant's failure to cooperate with federal

probation officer during a presentence investigation when such cooperation may disclose further

illicit activity, *United States v. Saani*, 650 F.3d 761, 770–71 (D.C. Cir. 2011).

Conversely, the Seventh Circuit in *Burr v. Pollard*, 546 F.3d 828 (7th Cir. 2008), held that

silence can be consistent not only with the exercise of one's Fifth Amendment right, "but also with

a lack of remorse. The latter is properly considered at sentencing because it speaks to traditional

penological interests such as rehabilitation (an indifferent criminal isn't ready to reform) and

deterrence (a remorseful criminal is less likely to return to his old ways)." *Id.* at 832. The Fifth

Circuit has similarly limited *Mitchell*'s prohibition to adverse inferences as to the facts of the

offense. *United States v. Ronquillo*, 508 F.3d 744, 749 (5th Cir. 2007). Additionally, three of our

---

[3]*Caro* cites a Third Circuit opinion, *Lesko v. Lehman*, 925 F.2d 1527 (3d Cir. 1991), as holding that a capital defendant's failure to apologize may not be used as evidence of a lack of remorse. *Caro*, 597 F.3d at 629. However, *Lesko* addresses comments made by a prosecutor at sentencing that criticized the defendant's failure to testify during the guilt phase of the trial. *Lesko*, 925 F.2d at 1540–41. The panel did not address—and indeed expressly refused to address—the constitutionality of negative inferences as to defendant's demeanor since the prosecution's comments so clearly violated *Griffin v. California*, 380 U.S. 609 (1965). *Lesko*, 925 F.2d at 1544–45.

sister circuits have balked at and expressed apparent skepticism toward expanding *Mitchell*'s no-adverse-inference rule beyond its clear holding. *United States v. Seward*, 583 F.3d 1045, 1048–49 (8th Cir. 2009); *Lee v. Crouse*, 451 F.3d 598, 605–06 (10th Cir. 2006); *United States v. Romero–Rendon*, 220 F.3d 1159, 1163 n.4 (9th Cir. 2000).

3

Both the express language and the majority circuit interpretation of *Mitchell* favor a narrow application of the no-adverse-inference rule. Furthermore, the courts that have favored an expansive view of *Mitchell* have done so in contexts where the defendant *remained silent*. *Woodall*, 685 F.3d at 579 (holding that a defendant who did not testify during the penalty phase of his death-eligible trial was entitled to a *Carter* instruction); *Caro*, 597 F.3d at 630 (observing that consideration of a defendant's silence to prove lack of remorse may violate the Fifth Amendment); *Roman*, 371 F. Supp. 2d at 51 (same); *Cooper*, 91 F. Supp. 2d at 112–13 (disallowing evidence that defendant remained silent as to his blameworthiness in post-arrest statements, but allowing evidence that defendant expressed pride in killing the victim to witnesses). The state trial judge here did not hold Miller's silence against him; rather, any adverse inference drawn against Miller was based upon the content of his voluntarily given allocution. It is accordingly doubtful that Miller would have a meritorious claim even under an expansive view of *Mitchell*. *Cf. Whitten*, 610 F.3d at 199–200 (holding that the defendant's voluntary allocution constituted a limited waiver of the Fifth Amendment).

However, the panel need not decide the correct interpretation of *Mitchell* for the purposes of this case. It is enough that fairminded jurists can and do disagree on the applicable scope of

*Mitchell.*  Accordingly, we cannot say that the Michigan Court of Appeals unreasonably applied the rule from that case.  To the extent that Miller asks us to expand *Mitchell*, he asks to grant relief based upon a rule that is not "clearly established Federal law, as determined by the Supreme Court of the United States."  Regardless of which route we take, the result is the same: Miller is not entitled to habeas relief under § 2254(d)(1).

IV

In conclusion, the district court erred in granting habeas.  Fairminded jurists disagree as to the scope and application of *Mitchell*'s no-adverse-inference rule, and we therefore cannot say that the Michigan Court of Appeals unreasonably applied it in this case.  To the extent that Miller asks us to expand *Mitchell*, his claim does not rest upon "clearly established Federal law."  His argument under § 2254(d)(1) accordingly fails.  We also find that, contrary to his assertion before this court, Miller's claim does not raise an issue under § 2254(d)(2).  As Miller has failed to demonstrate that he is entitled to relief under § 2254, we REVERSE the district court and DENY the writ of habeas corpus.